REPUBLIC INDUSTRIES, INC., a Delaware Corporation, as successor in interest to Johnson Motor Lines, Inc., Appellant,

v.

CENTRAL PENNSYLVANIA TEAMSTERS PENSION FUND.

No. 82–1251.

United States Court of Appeals, Third Circuit.

Argued Sept. 30, 1982.

Decided Nov. 19, 1982.

Harry A. Dower (argued), Dower & Dunn, Allentown, Pa., for appellee; Richard T. Muller, Bethlehem, Pa., of counsel.

Henry Rose, Gen. Counsel, Baruch A. Fellner (argued), Associate General Counsel, J. Stephen Caflisch, Sp. Counsel, Peter H. Gould, Terence G. Craig, David F. Power, Washington, D.C., for amicus curiae Pension Benefit Guar. Corp.

Before ALDISERT and HIGGINBOTHAM, Circuit Judges, and SAROKIN,* District Judge.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

It is a "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–64, 82 L.Ed. 638 (1938). The question for decision in this appeal is whether the district court erred in applying this rule when it refused to consider a challenge to the constitutionality of the Multiemployer Pension Plan Amendments Act of 1980 because appellant had not exhausted the arbitration procedure mandated by the Act. Appellant contends that the district court was wrong to compel arbitration because the policy justifications which support the exhaustion doctrine would not be furthered by postponing judicial review of its constitutional claims. We agree and accordingly reverse the judgment of the district court.

## I.

David L. Steck, Rawle & Henderson, Philadelphia, Pa., for appellant; Lester M. Bridgeman (argued), Louis T. Urbanczyk, Washington, D.C., Philip B. Kurland, John B. Coffey, III, Christopher G. Walsh, Jr., Rothschild, Barry & Myers, Chicago, Ill., of counsel.

Appellant, Republic Industries, Inc., is the successor in interest to Johnson Motor Lines, Inc., an employer who contributed to the Central Pennsylvania Teamsters Pension Fund ("the Fund") until August 8, 1980 when it ceased its business operations. On September 26, 1980, seven weeks-after that

* Honorable H. Lee Sarokin of the United States District Court for the District of New Jersey, sitting by designation.

corporate dissolution, the President signed the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), 29 U.S.C. §§ 1381–1461 (1982) (amending the Employer Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1381), which by its terms applies retroactively to April 28, 1980. *Id.* § 1461(e)(2).

Because this case centers on the provisions of MPPAA, we must examine that statute in detail. The Act provides that when a contributing employer withdraws from a multiemployer pension fund, it must pay a withdrawal liability—an allocated portion of the fund's unfunded vested benefit liability.[1] The duty to compute and collect this liability falls upon the trustees and actuaries of the fund. *Id.* §§ 1382, 1391, 1393, 1399. The Act provides that disputes over the amount of withdrawal liability shall be resolved through arbitration. *Id.* § 1401(a)(1). At arbitration, the fund's determination of withdrawal liability is presumed correct unless shown to be "unreasonable" or "clearly erroneous." *Id.* § 1401(a)(3)(A). If any party is dissatisfied with the outcome of arbitration, it may bring an action in the district court either where the plan is administered or where the defendant resides or does business. *Id.* § 1451(d). If such action is instituted, the arbitrator's findings of fact may be rebutted only by a preponderance of the evidence. *Id.* § 1401(b)(2), (c).

On November 18, 1981, in accordance with the Act, the Fund demanded withdrawal liability from Johnson Motor Lines in the amount of $848,494, payable on or before January 17, 1982. On January 12, 1982, Republic brought an action in the district court below seeking to enjoin the Fund from imposing such liability. Republic presented six constitutional challenges to MPPAA, arguing that the Act violates the fifth amendment by (1) imposing retroactive liability; (2) authorizing a prehearing seizure in the form of installment payments which must be paid during arbitration; (3) delegating the determination of liability to private actuaries who have no clear basis on which to compute such an amount; (4) dictating its liability standards in especially vague terms and imposing an excessive burden of proof on withdrawing employers; and (5) authorizing a "taking" without just compensation, *i.e.*, the use of private funds to promote the public purpose of providing pension benefits to workers. Further, Republic contended that the Act denies employers the right to a jury trial for the resolution of their disputes in contravention of the seventh amendment. *Republic v. Central Pennsylvania Teamsters Pension Fund,* 534 F.Supp. 1340, 1343–44 (E.D.Pa. 1982).

The district court dismissed the complaint for Republic's failure to exhaust the administrative remedies mandated by MPPAA and accordingly denied its request for injunctive relief. Republic appealed. Pension Benefit Guaranty Corporation, a wholly-owned United States Government corporation created by ERISA, 29 U.S.C. § 1302(a), to enforce, *inter alia,* the withdrawal liability provisions of MPPAA, filed an amicus brief.

## II.

■ In considering Republic's primary contention—that the policy justifications

---

1. *Id.* § 1381(a), (b). A fund's vested liability is the actuarial present value of the benefit obligations which have vested. The difference between this figure and the value of the fund's assets is the unfunded vested benefit liability. Withdrawal liability is the withdrawing employer's proportional share of the latter figure. *Id.* § 1393(c).

The purpose of this withdrawal liability provision is threefold: (1) to remove incentives for employers to withdraw from financially troubled plans; (2) to assure new employers contemplating entry into a plan that they will not be assuming vast obligations incurred by the plan prior to that entry; and (3) to ensure, in effect, that a withdrawing employer will continue to fund its proportional share of the plan obligations incurred during its association with the plan, rather than shift those obligations to the remaining contributing employers or to the Pension Benefit Guaranty Corporation, the federal insurer of multiemployer plans. *Id.* § 1001(a). See *Peick v. Pension Benefit Guaranty Corp.,* 539 F.Supp. 1025, 1029–34 (N.D.Ill. 1982), for an extensive discussion of the legislative history of MPPAA.

for requiring exhaustion are absent from this case—we must consider the purpose of the "long settled rule ... that no one is entitled to judicial relief ... until the prescribed administrative remedy has been exhausted." *Myers,* 303 U.S. at 50–51, 58 S.Ct. at 463–64. The exhaustion doctrine is justified by three policy concerns. First, adherence to the doctrine shows appropriate deference to Congress' decision, embodied in statute, that an independent administrative tribunal, and not the courts, should serve as the initial forum for dispute resolution. *Babcock & Wilcox Co. v. Marshall,* 610 F.2d 1128, 1137 (3d Cir.1979); *American Federation of Government Employees v. Resor,* 442 F.2d 993, 994 (3d Cir.1971). Were the courts to act prematurely, in disregard of this statutory scheme, the doctrine of separation of powers would be undermined. *First Jersey Securities, Inc. v. Bergen,* 605 F.2d 690, 695 n. 3 (3d Cir.1979) (citing *Resor,* 442 F.2d at 994); K. Davis, Administrative Law of the Seventies §§ 20.01–20.08 (1976).

Second, the exhaustion doctrine illustrates respect for administrative autonomy by forbidding unnecessary judicial interruption of the administrative process. This autonomy allows the administrative tribunal to exercise its own discretion, apply its own special expertise, and correct its own errors, thereby promoting administrative responsibility and efficiency and minimizing the frequent and deliberate flouting of administrative processes which could weaken the tribunal's effectiveness.[2] *McKart v. United States,* 395 U.S. 185, 194, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1968); *Bethlehem Steel Corp. v. EPA,* 669 F.2d 903, 907 (3d Cir.1982); *First Jersey,* 605 F.2d at 695.

Third, the exhaustion requirement fosters judicial economy both by permitting the administrative tribunal to vindicate a complaining party's rights in the course of its proceedings, thereby obviating judicial intervention, and by encouraging the tribunal to make findings of fact on which courts can later rely in their decisionmaking. *McKart,* 395 U.S. at 194–95, 89 S.Ct. at 1662–63; *Bethlehem Steel,* 669 F.2d at 907; *Babcock,* 610 F.2d at 1137; *First Jersey,* 605 F.2d at 695. These mooting and fact-finding functions may be particularly important in the resolution of cases involving constitutional issues. If the administrative tribunal decides a case on nonconstitutional grounds, the court may find it unnecessary to proceed with constitutional adjudication. In this way, exhaustion furthers the concept of judicial restraint: "constitutional issues should not be decided and legislation should not be invalidated, if a controversy may be resolved on some other ground." *Babcock,* 610 F.2d at 1137 (citing *Ashwander v. TVA,* 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring)). In addition, even if the court must reach the constitutional issues, the administrative tribunal will have developed the factual matrix so vital to constitutional decisionmaking. *Hodel v. Virginia Surface Mining & Reclamation Association,* 452 U.S. 264, 295–97, 101 S.Ct. 2352, 2370–71, 69 L.Ed.2d 1 (1981); *Aircraft & Diesel Equipment Corp. v. Hirsch,* 331 U.S. 752, 767, 67 S.Ct. 1493, 1500, 91 L.Ed. 1796 (1947); *Babcock,* 610 F.2d at 1137–38.

We have recognized three exceptions to the exhaustion doctrine: (1) when the nonjudicial remedy is clearly shown to be inadequate to prevent irreparable injury, *Resor,* 442 F.2d at 994–95; (2) when resort to the nonjudicial remedy would "clearly and unambiguously violate statutory or constitutional rights," *Bethlehem Steel,* 669 F.2d at 907–10; *Babcock,* 610 F.2d at 1138–41; *First Jersey,* 605 F.2d at 696–97; *Barnes v. Chatterton,* 515 F.2d 916, 921 (3d Cir.1975); and (3) when exhaustion would be futile, *United States ex rel. Marrero v. Warden, Lewisburg Penitentiary,* 483 F.2d 656, 659 (3d Cir.1973).

---

**2.** "[This policy justification] is consonant with the underlying rationale for the ripeness doctrine—'to prevent the courts ... from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized ....'" *A.O. Smith Corp. v. FTC,* 530 F.2d 515 (3rd Cir.1976) (quoting *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967)).

■ We also have ruled that these exceptions apply only in "extraordinary circumstances," *First Jersey,* 605 F.2d at 696, when the remedy to be exhausted, though supported by the underlying policy justifications of the doctrine, should not be compelled because of some countervailing consideration.

## III.

■ The conventional approach would simply be an inquiry by the court as to whether the exhaustion doctrine or an exception thereto is applicable. But Republic has mounted an argument that raises threshold considerations that go not so much to exceptions to the exhaustion doctrine but rather to conditions precedent to its application. Republic argues, and we agree, that although the exhaustion doctrine speaks only to the timing of judicial review and not to its eventual application, the doctrine should not be invoked without analysis. It "should be applied with a regard for the particular administrative scheme at issue." *Bethlehem Steel,* 669 F.2d at 906 (quoting *Weinberger v. Salfi,* 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975)). If the statutory schema mandates exhaustion of an administrative remedy, and if that remedy is adequate in its furtherance of the policies behind the doctrine, then only in extraordinary circumstances, when the complaining party satisfies one of the narrow exceptions to the doctrine, should the courts excuse exhaustion. *See First Jersey,* 605 F.2d at 696. A twofold inquiry thus becomes necessary: whether arbitration under the statute is properly an administrative remedy, and, if so, whether the remedy is adequate.

Republic contends that the district court erred in mandating exhaustion because arbitration is not the type of administrative proceeding implicated by the doctrine nor does it constitute an adequate administrative remedy. In effect, it argues that because these prerequisites are absent, the doctrine itself is inapplicable, and, therefore, the court below erred in reaching the question of whether Republic satisfied an exception to the doctrine. We now examine this contention.

## A.

■ Because MPPAA explicitly mandates the initial resolution of withdrawal liability disputes through arbitration, the first question is whether arbitration is the type of administrative proceeding implicated by the exhaustion doctrine. Republic argues that the doctrine is inapplicable because a private arbitrator is not an "administrative agency" and is selected ad hoc for a single case, thereby lacking any "administrative expertise" from which a court might benefit. We disagree.

We have recently held that the nonjudicial processes of the National Association of Securities Dealers, a private corporation empowered by Congress to regulate its members, are subject to the exhaustion doctrine. *See First Jersey,* 605 F.2d at 696. In *First Jersey,* we noted that "Congress preferred self-regulation by a private body over direct involvement of a government agency," *id.* at 698, and that ultimate judicial review was available if the nonjudicial action failed to resolve constitutional or statutory complaints, *id.* at 696. Further, we credited Congress with the establishment of procedural safeguards to prevent abuses of the system. *Id.* at 698. Thus, considerations of sound "judicial administration," *id.* at 695, prompted us to respect the congressional choice of primary decisionmaker.

We also indicated that such nonjudicial, nonagency procedures may be appropriate in other contexts and that judicial respect should extend to them as well: "To uphold [appellant's] contention would destroy the valuable congressional scheme for self-regulation in the ... area and the destruction could very well extend to other areas employing intramural controls. [The court must respect] Congress's thoughtful view that self-regulation is the best first-line defense." *Id.* at 698.

We believe that the identical analysis applies here. Congress, in enacting MPPAA, expressed a clear preference for self-regula-

tion through arbitration, 29 U.S.C. § 1401(a)(1); provided for judicial review in the event that arbitration failed to resolve the controversy, *id.* § 1401(b)(2); and established an elaborate procedural framework to guide the arbitrator, *id.* §§ 1381–1461. Thus, in accordance with the exhaustion doctrine's policy of deference to Congress, the legislature's decision that arbitration, and not the courts, is the proper forum for the initial resolution of disputes should be respected.

Application of the exhaustion doctrine to arbitration proceedings also is consistent with the other policies of the doctrine. The autonomy of the arbitration process is promoted by forbidding the interruption of that tribunal's proceedings until it has exercised its discretion and applied its expertise. In addition, arbitration can further the goals of judicial economy and judicial restraint either by resolving a complaining party's grievance, thereby mooting an appeal concerning the constitutional issues at stake, or by making factual findings that must precede appellate review. *See Aircraft & Diesel Corp.,* 331 U.S. at 767, 67 S.Ct. at 1501; *Ashwander,* 297 U.S. at 347, 56 S.Ct. at 483 (Brandeis, J., concurring).

Because arbitration is consistent with the policies of the exhaustion doctrine, appellant's related argument that the exhaustion doctrine should not apply because the arbitrator is selected on an ad hoc basis and has no "administrative expertise" from which a court might benefit, must also fail. Since MPPAA allows the parties to select the arbitrator, it is unreasonable to assume that they will select one ignorant of the relevant issues. Consequently, application of the exhaustion doctrine to arbitration by an administrative tribunal is consistent with our decisions and the policy justifications for the doctrine. The question remains, however, whether arbitration is an adequate administrative remedy within the facts of this case. We now address that inquiry.

### B.

■ The exhaustion doctrine presupposes an adequate administrative remedy. *See* L.

Jafee, Administrative Law 426 (1965). No remedy is adequate if it fails to satisfy the underlying policy justifications of the doctrine. *See Cerro Metal Products v. Marshall,* 620 F.2d 964, 970–71 (3d Cir.1980). It is critical, therefore, to determine whether compelling arbitration would further the goals of deference to Congress, administrative autonomy, and judicial economy.

In considering whether the first two policy justifications for the exhaustion doctrine would be met by compelling arbitration, it is important to determine the nature of Republic's constitutional challenge. As Professor Kenneth Culp Davis notes:

A fundamental distinction must be recognized between constitutional applicability of legislation to particular facts and constitutionality of the legislation. When a tribunal passes upon constitutional applicability, it is carrying out the legislative intent, either express or implied or presumed. When a tribunal passes upon constitutionality of the legislation, the question is whether it shall take action which runs counter to the legislative intent. We commit to administrative agencies the power to determine constitutional applicability, but we do not commit to administrative agencies the power to determine constitutionality of legislation.

3 K. Davis, Administrative Law Treatise § 20.04, at 74 (1958).

The Fund and the amicus, Pension Benefit Guaranty Corporation, contend that Republic mounts a challenge to the constitutionality of MPPAA as applied—a proper matter to commit to arbitration. They argue that Republic freely admitted as much during oral argument. We acknowledge this admission but do not consider it controlling. We recognize that statements of counsel uttered under the fire of oral argument, delivered in the heat of judicial interrogation, cannot decide this important issue. Moreover, Republic's actual admission during oral argument was that its contentions on appeal contained both "as applied" and "facial" constitutional challenges.

We believe that a closer examination of Republic's constitutional claims reveals a facial constitutional challenge. Republic does not specifically attack the constitutional applicability of MPPAA's withdrawal liability provisions. It does, however, launch a constitutional broadside on the whole statute, the entire administrative structure, the basic fairness of MPPAA. We conclude, therefore, that Republic's frontal assault on the entire statute constitutes a facial constitutional challenge which supports the inapplicability of the exhaustion doctrine.

To compel arbitration in the context of a facial challenge would promote neither deference to Congress nor administrative autonomy. First, the legislature could not have intended to defeat separation of powers principles by allowing an administrative tribunal to review the constitutional validity of a statute—a function reserved for the judiciary. It would be unconstitutional, therefore, to compel the arbitrator to review the facial constitutionality of MPPAA. Moreover, such a mandate would thwart, rather than promote, deference to Congress by compelling exhaustion of a remedy the legislature never intended to provide.

Second, because the statute itself provides for the procedures that Republic challenges, *id.* §§ 1381–1461, and the arbitrator is not at liberty to change these provisions, the determinations which must be made to resolve Republic's claims are beyond the power of the arbitrator. For example, the arbitrator has no authority to decide that the statute is inapplicable to employers who withdrew from the Fund prior to the Act's date of passage, to excuse the monthly payments that Republic argues constitute a prehearing seizure, to find that the computation mechanism provided for actuaries is too vague or that the actuaries have been given their authority on impermissible bases, to alter the burdens of proof, or to order a jury trial. Administrative autonomy thus becomes a meaningless concept under these circumstances, because regardless of the extent of the tribunal's autonomy, the arbitration device cannot provide the desired remedy. To subject liti-

gants to the processes of an impotent administrative tribunal would be to undermine public confidence in the administrative procedures the doctrine seeks to promote. The law should never command a litigant to perform a useless action. In the context of this case, the arbitration device can be considered useless unless it meets two prerequisites: providing an adequate remedy for the litigant or, alternatively, furthering the goal of judicial economy. Having determined that the remedy is inadequate to attend the litigant's needs, we must now inquire whether the arbitration procedure furthers the goal of judicial economy.

Although constitutional decision-making is traditionally reserved for the judiciary, the important considerations underlying the factor of judicial economy acknowledge that the mere allegation of the presence of constitutional issues does not excuse exhaustion. *See Resor,* 442 F.2d at 994. Additional evidence of the administrative tribunal's incapacity either to moot constitutional issues or to establish a factual matrix for judicial review must be shown before exhaustion may be excused. *See Aircraft & Diesel,* 331 U.S. at 767, 67 S.Ct. at 1500; *Ashwander,* 297 U.S. at 347, 56 S.Ct. at 483 (Brandeis, J., concurring); *Babcock,* 610 F.2d at 1137–38. We believe that Republic's facial constitutional challenge should be considered in light of these evidentiary requirements which underlie the judicial economy rationale for the exhaustion doctrine. The Fund and the amicus, acknowledging the importance of these requirements, contend that arbitration could either moot Republic's claims or result in helpful fact-finding. We disagree.

We are convinced that arbitration cannot moot Republic's constitutional claims by deciding the case on nonconstitutional grounds because the claims are purely constitutional. The only way the issues could be mooted would be if the arbitrator were to find that Republic owed no money as a result of its withdrawal from the fund.

The statute provides no basis for such a finding.[3]

The most favorable determination that Republic could possibly receive under MPPAA would be a finding by the arbitrator that a statutory exemption applies. All the parties agree that the only exemption that could conceivably apply in this case is the trucking industry exemption, 29 U.S.C. § 1383.[4] For several reasons, we believe that this provision provides no basis for compelling exhaustion. To satisfy the exemption, Republic would have to show by a preponderance of evidence that the Fund's determination that the exemption is inapplicable, evidenced by its failure to account for the exemption in its computation of Republic's withdrawal liability, was unreasonable or clearly erroneous. *Id.* § 1401(a)(3)(A). Given the narrowness of the exemption, it is virtually impossible for Republic to satisfy this burden of proof. Additionally, even if Republic could meet its burden, it still would not be absolved of liability for it would be required to post a bond for 50% of the withdrawal liability amount for five years which would necessitate the payment of substantial annual premiums and the posting of security. *Id.* § 1383(d)(3)(B)(ii). We conclude, therefore,

that arbitration could not possibly moot Republic's constitutional claims.

Furthermore, we believe that arbitration cannot establish a factual matrix which would assist the court in its later resolution of the constitutional issues presented. The only fact which the arbitrator can determine is the amount of Republic's withdrawal liability now due and payable. This fact, alone, would not be helpful to a court required to rule on the constitutionality of MPPAA. The factual context necessary for the resolution of these questions cannot be gleaned from arbitration because the pertinent facts concern the procedures in the Act itself—facts which are presently available.

### C.

Thus, because Republic mounts a facial challenge to the constitutionality of MPPAA and because arbitration could neither moot the constitutional issues presented by resolving this matter on nonconstitutional grounds nor develop a factual matrix for the later resolution of the issues by the judiciary, arbitration does not provide an adequate administrative remedy for Republic's claims, and it would be futile to compel exhaustion.[5]

---

**3.** The Pension Benefit Guaranty Corporation admits as much in its amicus brief as it discusses the possible provisions which could *mitigate* the withdrawal liability assessed against Republic.

Section 1401(d) of the statute provides that "[p]ayments shall be made by the employer in accordance with the determinations made [by the fund] until the arbitrator issues a final decision with respect to the determination submitted for arbitration, with any necessary adjustments in *subsequent payments* for the overpayment or underpayment arising out of the decision of the arbitrator." (emphasis added). This section clearly presupposes that some subsequent payments will be made, thereby negating the contention that the arbitrator could find no liability. In addition, there is no provision in MPPAA which explicitly provides a method of repayment whereby all installment payments will be returned to the employer upon a finding of zero withdrawal liability of the arbitrator.

**4.** The trucking industry exception permits an employer to withdraw from a multiemployer plan without incurring liability if: (1) substantially all contributors to the plan are engaged in

the long and short haul trucking industry, the household goods moving industry, or the public warehousing industry; (2) the employer either permanently ceases to have an obligation to contribute under the plan or permanently ceases all covered operations under the plan; and (3) either the Pension Benefit Guaranty Corporation determines, within five years after such cessation, that the plan has not suffered substantial damage to its contribution base as a result of such cessation or the employer furnishes a suitable escrow account or bond in an amount equal to 50% of the employer's withdrawal liability.

**5.** Such a conclusion is consistent with the decisions of other courts that have already ruled on the constitutionality of MPPAA. See *Shelter Framing Corp. v. Carpenters Pension Trust,* 543 F.Supp. 1234, 1241 (C.D.Cal.1982) ("[t]o make these plaintiffs go through the ... process of arbitration ... is simply unfair when [it] could not adjudicate their principal grievance which is that the whole basic statute is unconstitutional"); *Peick,* 539 F.Supp. 1025, 1038 (N.D.Ill.1982) (on ripeness grounds, court held

In reaching this conclusion, we are cognizant of the peculiar factual scenario before us. We decide today that arbitration, concededly an administrative remedy, is not, in the rare posture of this case, adequate for the purposes of the exhaustion doctrine. If Republic were forced to submit to arbitration at this point, it would merely undergo a useless exercise which would do no more than postpone adjudication of its constitutional claims. Such a mandate would not further the interests of deference to Congress, administrative autonomy, or judicial economy which form the philosophical underpinnings of the exhaustion doctrine. Blindly compelling exhaustion where such policy justifications are absent would be to place the doctrine inside a virtually impregnable wall—an action which could eventually bring about the weakening or the demise of the "long-settled rule."

Because it is so unusual to have a facial constitutional challenge to legislation that could not in some way be aided by administrative review, we are confident that ordering immediate judicial consideration of Republic's constitutional claims will not dilute the efficacy of the exhaustion doctrine—a fear of many courts that properly insist upon the application of this important aspect of the judicial process. *See Bethlehem Steel,* 669 F.2d at 910; *First Jersey,* 605 F.2d at 696–97. Because the exhaustion doctrine is inapplicable to this case, we need not go on to consider whether Republic could employ one of the narrow exceptions to the doctrine to merit exemption from the exhaustion requirement.

## IV.

Accordingly, we will reverse the judgment of the district court and remand with instructions that the district court enjoin the arbitration proceeding pending the resolution of Republic's constitutional claims. In so instructing, we acknowledge the intent of Congress, as embodied in § 4221(d)

that although the "lack of a factual record and the possibility of an exemption might indicate a lack of ripeness if plaintiffs were challenging MPPAA as applied, they were bringing a facial

of MPPAA, to ensure that withdrawal liability payments to pension funds are secured pending the outcome of the dispute resolution process. Our decision, therefore, does not relieve Republic of its obligation to either make interim payments to the Fund or, under the direction of the district court, to otherwise ensure that such payments will be made to the Fund should litigation be resolved in the Fund's favor.

challenge to the statute and ... [accordingly, the aforesaid] factors present[ed] no bar to their action").