**REFINED SUGARS, INC., Plaintiff,**

v.

**LOCAL 807 LABOR–MANAGEMENT PENSION FUND and the Board of Trustees of the Local 807 Labor-Management Pension Fund, Defendants.**

No. 83 Civ. 3030(MEL).

United States District Court,
S.D. New York.

Feb. 29, 1984.

Seham, Klein & Zelman, New York City, for plaintiff; Roger H. Briton, New York City, of counsel.

O'Connor & Mangan, P.C., Long Island City, N.Y., for defendants; J. Warren Mangan, Long Island City, N.Y., James M. O'Neill, of counsel.

LASKER, District Judge.

Refined Sugars, Inc. ("RSI") brought this action for declaratory and injunctive relief against defendants Local 807 Labor-Management Pension Fund (the "Fund") and its Board of Trustees (the "Trustees") to prohibit them from asserting a claim for $192,639 against RSI under the withdrawal liability provisions of the Multi-Employer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1381 *et seq.*[1] RSI claims that since it is not an "employer" as defined by the MPPAA, it has no withdrawal liability to the Fund. RSI also challenges the constitutionality of the MPPAA both on its face and as applied. The matter at hand turns on whether this court or an arbitrator should decide whether RSI is an "employer" under the MPPAA.

The MPPAA provides that "[a]ny dispute between an employer and a plan sponsor of a multi-employer plan concerning a determination made under sections 1381 through 1399 shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1). Defendants contend that the question whether RSI is an employer and hence subject to the Act's obligations and sanctions comes within the arbitration provision. Defendants consequently seek a judgment on the pleadings dismissing the complaint. The motion is denied.

### I.

The MPPAA provides that any employer who withdraws in whole or in part from a multi-employer plan after April 28, 1980 (the effective date of the Act) must pay a withdrawal liability in a sum determined under the statute. 29 U.S.C. § 1381(a). The amount of withdrawal liability is determined by the pension plan sponsor according to a statutory formula. 29 U.S.C. §§ 1381(b), 1391. Once the sponsor determines the employer's liability, it is to notify the employer of the amount of the liability, establish a schedule for its payment and demand payment accordingly. 29 U.S.C. §§ 1382, 1399(b)(1). The employer may request that the sponsor review any specific matter relating to the determination of the employer's liability and the schedule of payments. 29 U.S.C. § 1399(b)(2)(A). The sponsor, after a reasonable review of the matters raised by the employer, must then notify the employer of its decision and the basis for that decision. 29 U.S.C.

---

**1.** The MPPAA amends the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*

§ 1399(b)(2)(B). If the employer disputes the fact or amount of the determination of withdrawal liability due, the parties must submit the dispute to arbitration. 29 U.S.C. § 1401(a).

## II.

In letters to RSI dated October 4 and October 7, 1982 the Fund asserted a claim for $192,639 against RSI pursuant to the withdrawal liability provisions of the MPPAA. The October 4 letter asserted, in pertinent part, that "as a result of the reduction or termination in covered employment under your labor agreement with Local 807, I.B.T., you have incurred an extra-contractual liability to the Fund." The October 7 letter set forth a payment schedule according to which RSI was to pay the Fund the $192,639. It also advised RSI of its right to seek review of the Fund's withdrawal liability determination.

In a series of letters to the Fund dating from October 1982 to March 1983,[2] RSI contested its liability on the grounds that it is not an employer as that term is defined by the MPPAA, and that therefore the MPPAA does not apply to it nor has RSI any withdrawal liability to the Fund. RSI also requested review of the Fund's decisions that a complete withdrawal had occurred, and that RSI was responsible for withdrawal liability; RSI also requested review of the calculation of the alleged withdrawal liability. The Fund did not respond to RSI's request for review. In response to the Fund's demand for payment,[3] RSI has been making payments for the amount allegedly due into an escrow account according to the schedule set forth in the Fund's October 7, 1982 letter.

**2.** RSI's letters are dated October 7, 1982, October 29, 1982, December 22, 1982, and March 18, 1983.

**3.** In a letter dated November 5, 1982 the Fund notified RSI that if it failed to make the first installment payment of the withdrawal liability allegedly due within sixty (60) days, the Fund would demand immediate payment of the full amount allegedly due.

## III.

RSI contends that the question whether or not it is an employer within the coverage of the MPPAA is for a court, not an arbitrator, to decide. It argues that since the MPPAA requires an "employer" to arbitrate disputes "concerning a determination made under sections 1381 through 1399," 29 U.S.C. § 1401(a)(1), and since the term "employer" is defined elsewhere in ERISA, at 29 U.S.C. § 1002, then, on its face the issue which the Fund seeks to arbitrate is not arbitrable under the MPPAA. Alternatively, RSI contends that even if the issue of its employer status is arbitrable under the MPPAA, "exhaustion" of the arbitration remedy is not required in this case. While arbitration is not an administrative remedy and "exhaustion" is not precisely the correct term for describing the parties' obligation to arbitrate their dispute, courts interpreting the MPPAA have held that the policies underlying the exhaustion doctrine are generally applicable to the arbitration proceedings established by the MPPAA. *See Republic Industries v. Teamsters Joint Council,* 718 F.2d 628 (4th Cir.1983); *Republic Industries, Inc. v. Central Pennsylvania Teamsters,* 693 F.2d 290 (3d Cir. 1982). These courts refer to the requirement to arbitrate disputes under the MPPAA as "exhaustion". RSI bases its position on the exceptions to the exhaustion of administrative remedies doctrine which hold that exhaustion is not required either when the issues presented revolve around statutory interpretation or when the questions presented include facial challenges to the constitutionality of legislation.[4]

Defendants contend that since § 1002 is the general definitional section of ERISA, it is necessarily incorporated into any subsequent section which uses a defined word

**4.** Plaintiff also argues that exhaustion is not required when the facts are essentially undisputed or where arbitration would serve no useful purpose because a court must ultimately decide the questions which are to be put before the arbitrator. Since the statutory interpretation exception is clearly applicable, the applicability of these other exceptions is not addressed.

or term. Hence, they argue, the definition of the term "employer" is necessarily included within sections 1381 through 1399. They also contend that any "determination" of withdrawal liability necessarily includes a determination that the entity against whom liability is assessed is an employer. Finally, they dispute the contention that any exceptions to the exhaustion doctrine apply to the MPPAA because § 1401(a)(1) provides that *"any* dispute ... *shall* be resolved through arbitration." (Emphasis added.)

### IV.

The MPPAA was enacted in September 1980. This motion raises a question which has not been addressed in this circuit: whether, under the MPPAA, the issue of whether RSI is an "employer" as defined by the Act is to be decided by the court or by an arbitrator.

 While exhaustion of statutorily prescribed remedies must usually precede resort to judicial resolution, *Meyers v. Bethlehem Ship Building Co.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–64, 82 L.Ed. 638 (1938), and while the policies underlying the exhaustion doctrine are generally applicable to the arbitration proceedings established by the MPPAA, *Republic Industries v. Teamsters Joint Council, supra; Republic Industries, Inc. v. Central Pennsylvania Teamsters, supra,* there are exceptions to this doctrine which are applicable to this case. Exhaustion is not required, for example, where the issues involved require statutory interpretation. *McKart v. United States,* 395 U.S. 185, 197–98, 89 S.Ct. 1657, 1664–65, 23 L.Ed.2d

194 (1969) (Exhaustion doctrine is not applicable where the question is "solely one of statutory interpretation. The resolution of that issue does not require any particular expertise on the part of the [agency]; the proper interpretation is certainly not a matter of discretion.").[5] Nor is exhaustion required where the questions presented include facial challenges to the constitutionality of the legislation involved. *Oesterich v. Selective Service Board,* 393 U.S. 233, 242, 89 S.Ct. 414, 419, 21 L.Ed.2d 402 (1966) (Selective Service Act); *Republic Industries v. Teamsters Joint Council, supra,* (MPPAA); *Shelter Framing Corp. v. PBGC,* 705 F.2d 1502 (9th Cir.1983) (MPPAA); *Republic Industries, Inc. v. Central Pennsylvania Teamsters, supra,* (MPPAA); *Finnerty v. Cowen,* 508 F.2d 979 (2d Cir.1974) (Railroad Retirement Act); *T.I.M.E.–DC, Inc., supra,* (MPPAA).[6]

Several other courts have examined the exhaustion issue as it applies to the MPPAA arbitration provision. In *T.I.M.E.–DC, Inc. v. Trucking Employees of North Jersey Welfare Fund,* 560 F.Supp. 294 (E.D.N.Y.1983), the court held that arbitration was not the proper forum for determination of a question whose resolution would require statutory interpretation even though the statutory provision in question was within those sections subject to arbitration. In that case the employer claimed that it was not required to pay withdrawal liability under the "labor dispute" exception to the MPPAA, 29 U.S.C. § 1399.

In *Meatcutters Local 88 Pension Plan v. Del Monte Supermarkets, Inc.,* 565 F.Supp. 27 (E.D.Mo.1983), the employer challenged the amount of a fund's determi-

---

**5.** *See also Touche Ross & Co. v. SEC,* 609 F.2d 570, 577 (2d Cir.1979) (Exhaustion is not required where "the issue is one of purely statutory interpretation ... [T]here is no need for the exercise of discretion on the part of the agency nor for the application of agency expertise."); and *T.I.M.E.–DC, Inc. v. Trucking Employees of North Jersey Welfare Fund,* 560 F.Supp. 294, 302 (E.D.N.Y.1983) (Exceptions to the exhaustion doctrine include cases where the issues presented to the court involve statutory interpretation; such exceptions "reflect an underlying perception that arbitrators and administrative agencies

need not be resorted to when there is no need for agency expertise or the exercise of agency discretion. *Touche Ross* at 577.").

**6.** In the underlying dispute (i.e., plaintiff's suit for declaratory and injunctive relief) plaintiff alleges that the MPPAA is unconstitutional both on its face and as applied to it. In its opposition to defendants' motion for judgment on the pleadings, however, RSI does not contend that an arbitrator cannot constitutionally determine whether or not it is an employer under the Act.

nation of withdrawal liability on the ground that the fund had included several "facilities" which the employer claimed it had closed prior to the enactment of the Act and which therefore were not subject to the Act. *See* 29 U.S.C. § 1397(a). As in *T.I.M. E.–DC, Inc.*, the court held that arbitration was not the proper forum for the determination of a question whose resolution would require statutory interpretation even though the statutory provision relied upon was within those sections subject to arbitration.

"Neither an arbitrator nor the trustees of a pension plan are authorized to interpret or construe a federal statute. The interpretation of a federal statute is a matter reserved for the federal courts. *Northwest Airlines, Inc. v. Air Line Assn.*, 442 F.2d 251, 255 (8th Cir.1971) .... [Here] liability vel non is initially dependent upon the interpretation of the term facility.

"Inasmuch as an arbitrator could not interpret section 1397, a request for arbitration ... would serve no purpose."

Similarly, in *IAM National Pension Fund v. Schulze Tool and Die Co.*, 564 F.Supp. 1285, 4 EBC 2097 (N.D.Cal.1983) the court held that where the basic issue is one of statutory interpretation and where there are no significant disputes of fact, a court rather than an arbitrator is the more appropriate adjudicatory forum. In that case the central dispute revolved around whether the employer had ceased to have "an obligation to contribute" to the fund before the effective date of the Act. *See* 29 U.S.C. §§ 1381, 1392.

■ The question whether or not RSI is an employer under the MPPAA obviously requires statutory interpretation. The ERISA section which defines the term "employer" merely provides that an employer is "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in

such capacity." 29 U.S.C. § 1002(5).[7] This definition is so conclusory as to necessarily require statutory interpretation. It therefore appears that in the absence of a clear statutory intention, the issue should not be decided by arbitration. The statute contains no such clearly stated purpose, nor does its language suggest arbitrability of the matter.

Moreover, none of sections 1381 through 1399 instruct an arbitrator how to determine who the employer is for purposes of determining against whom liability is to be assessed. As the court held in *Baldwin v. Shopmen's Ironworkers Pension Trust*, 3 Employee Benefits Cases ("EBC") 1713 (C.D.Cal.1982), employer status is not an arbitrable question because there is no indication that Congress contemplated that § 1401(a)(1) would empower an arbitrator to make decisions outside the context of sections 1381 through 1399. As indicated above, sections 1381 through 1399 cover the determinations for which Congress has provided an arbitral resolution under the MPPAA. Those sections

"involve questions of whether an employer has totally, partially or not withdrawn from a plan and what the amount, if any, of its consequent liability should be. These determinations are made by reference to and by interpretation of the Act, which has detailed provisions as to when withdrawal has occurred, whether such withdrawal is total or partial, whether the employer is liable for payment of withdrawal liability after a withdrawal has taken place and how that liability is to be computed."

*Baldwin*, 3 EBC at 1716. There are no similarly detailed provisions for determining whether or not an entity against whom a fund has assessed withdrawal liability is in fact or law an employer under the Act.

■ Finally, RSI should, of course, not be required to accept arbitral determination if, indeed, the MPPAA is not applicable to it. The case before the court is analogous to an action in which it is alleged that there

---

**7.** Section 1002(9) further defines "person" as "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization."

is a contractual duty to arbitrate. In such a case the Supreme Court has held that compulsory submission to arbitration cannot precede judicial determination that the contract did in fact create a duty to arbitrate. *See, e.g., John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). "Thus, just as an employer has no obligation to arbitrate issues which it has not agreed to arbitrate, [citations omitted] ... so, *a fortiori,* it cannot be compelled to arbitrate if an arbitration clause does not bind it at all." *John Wiley & Sons,* 376 U.S. at 547, 84 S.Ct. at 913. Similarly, in the present case, RSI cannot be compelled to arbitrate its dispute with defendants if it is not subject to the MPPAA. The dispute as to its employer status must be resolved by this court in order to determine whether the MPPAA is applicable to it at all.[8]

For the foregoing reasons defendant's motion for judgment on the pleadings is denied.

It is so ordered.

---

**8.** *Cf. Speckman v. Barford Chevrolet Co.,* 535 F.Supp. 488 (E.D.Mo.1982) in which the court determined that because the defendant had permanently ceased all covered operations prior to the effective date of the Act, it was not subject to the provisions of the Act and was therefore not required to engage in arbitration concerning withdrawal liability.