The FLYING TIGER LINE, INC., et al., Plaintiffs,

v.

CENTRAL STATES, SOUTHWEST and SOUTHEAST AREAS PENSION FUND, et al., Defendants.

Civ. A. No. 86–304 CMW.

United States District Court, D. Delaware.

Oct. 17, 1986.

---

**14**

R. Franklin Balotti and Jesse Finkelstein of Richards, Layton & Finger, Wilmington, Del., for plaintiffs; Cravath, Swaine & Moore, New York City, of counsel.

Irving Morris of Morris & Rosenthal, Wilmington, Del., for defendant Central States, Southeast and Southwest Areas Pension Fund; Rodney F. Page, Michael Evan Jaffe, David T. Dekker and James J. Armbruster of Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., of counsel.

David C. McBride and Barry M. Willoughby of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for defendant Teamsters Pension Trust Fund of Philadelphia and Vincinity; Thomas W. Jennings,

Sanford G. Rosenthal and Kent Cprek of Sagot & Jennings, Philadelphia, Pa., of counsel.

David C. McBride and Barry M. Willoughby of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for defendant Western Pennsylvania Teamsters and Employers Pension Fund; Henry M. Wick, Jr., Charles J. Streiff and Vincent P. Szeligo of Wick, Rich, Fluke & Streiff, Pittsburgh, Pa., of counsel.

James L. Patton, Jr. of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for defendant, Teamsters Local 641 Pension Fund; D. Gayle Loftis, Jersey City, N.J., of counsel.

Barry M. Willoughby of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for defendant Trucking Employees of North Jersey Welfare Fund, Inc.; Sidney Reitman and Bennett D. Zurofsky of Reitman, Parsonnet, Maisel & Duggan, Newark, N.J., of counsel.

Barry M. Willoughby of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for defendant Central Pennsylvania Teamsters Pension Fund; Charles R. Osinski, Allentown, Pa., of counsel.

CALEB M. WRIGHT, Senior District Judge.

In July of 1986, plaintiffs Flying Tiger Line, Inc., Tiger International, Inc. and Warren Transport (collectively "Tiger"), brought this action seeking declaratory and injunctive relief against the defendant pension funds ("Funds").[1] The action contained three counts. The first count sought a declaration that Tiger was not an "employer" for the purpose of the Multiemployer Pension Plan Amendments Act ("MPPAA") and was therefore not subject to the MPPAA's procedures. The second and third counts were facial and as-applied challenges to MPAA's constitutionality.

This Court issued an Opinion and Order on September 12th denying defendants'

---

1. The plaintiffs seek to certify a defendants' class action. The named defendants are Central States, Southeast and Southwest Areas Pension Fund; Teamsters Pension Trust Fund of Philadelphia and Vicinity; Western Pennsylvania Teamsters and Employees Pension Fund; Trucking Employees of North Jersey Welfare Fund, Inc.; and Central Pennsylvania Teamster Pension Fund.

motion to dismiss. The Court held that because the Tiger companies faced irreparable injury if forced to make interim payments, the normal requirement of exhaustion of administrative remedies would not be required. Accordingly, this Court determined that it would decide the Count I issue of "employer" status before requiring Tiger to go through the arbitration procedures.[2] The Court stayed resolution of the facial constitutional challenge until the Supreme Court rules on the pending appeal of *United Retail & Wholesale Employees Teamsters Union Local 115 Pension Plan v. Yahn & McDonnell,* 787 F.2d 128 (3d Cir.1986). 55 U.S.L.W. 3127 (U.S. August 14, 1986) (No. 86–231). The Court also stayed the as-applied challenge because no one has applied MPPAA to Tiger yet. Now before the Court are the Funds' various reconsideration motions.[3]

FACTS

The factual setting is the same as for the prior opinion. For a description of the facts, see Op. at 1–5.

IRREPARABLE INJURY

■ This Court decided on September 12th that it had the power to hear Count I because Tiger's claim fit into the irreparable injury exception to the exhaustion doctrine. When a plaintiff is confronted with irreparable injury if forced to go through administrative proceedings before coming to court, the plaintiff may bypass these procedures and go directly to court. *Republic Industries, Inc. v. Central Pennsylvania Teamsters Pension Fund,* 693 F.2d 290 (3d Cir.1982); Op. at 7.

■ On reconsideration, the Court must "bite the bullet", *West v. Keve,* 721 F.2d 91, 94 (3d Cir.1983), and reverse itself. Accepting the allegations of Tiger's financial condition, the Court does not believe that Tiger will be harmed more if forced to go to arbitration than if Tiger goes to court. If there is no distinction in the harm Tiger faces whether in court or in arbitration, then the irreparable injury exception to the exhaustion doctrine should not apply.[4]

The first harm Tiger alleged was that the collection of interim withdrawal liability payments would irreparably harm the company. A determination that interim payments are due, however, is not self-enforcing. If a Fund wishes to collect payments, that Fund must come before a court. *United Retail & Wholesale Emp. v. Yahn & McDonnell,* 787 F.2d 128, 134 (3d Cir. 1986).

The other harms alleged concerned the perception of Tiger's financial health that would result in even the assertion of withdrawal liability. First, the liability payments that are presently being asserted against Hall's are arguably being asserted against Tiger as well. Any Tiger creditor knows that Tiger is involved in litigation, whether before this Court or before an arbitrator, with the Funds over the issue of Tiger's responsibility for Hall's withdrawal.[5] In plaintiffs' opposition to the recon-

2. The Court outlined the MPPAA procedures in the September 12, 1986 Opinion and Order ("Op.") at 6–8. The "employer" question here concerns whether or not Tiger was part of the Hall's Motor Company, Inc. ("Hall's") control group on the date Hall's withdrew from the Funds.

3. The Western Pennsylvania Teamsters and Employees Pension Fund filed a Motion for Reconsideration and a Motion for an Amended Order to Permit an Interlocutory Appeal, and Central States, Southeast and Southwest Areas Pension Fund filed a Motion for Reargument or, in the Alternative, to Stay Pending Arbitration. All named defendants joined in the Central States' motion. The Court will also rule on the class certification and equitable tolling matters raised at the October 9, 1986 hearing.

4. It is within the discretion of the district court to decide whether the exhaustion doctrine or an exception thereto applies. *See McKart v. United States,* 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969).

5. *See, e.g.,* Exhibit C, a Form 10–K submitted by The Flying Tiger Line, Inc., Appendix to Plaintiffs' Memorandum In Opposition to Defendants' Motion For Reargument, etc. at 39:

At December 29, 1984, Hall's audited financial statements disclosed a contingent MEPPAA withdrawal liability of approximately $40,-000,000.... [...] Tiger International understands that certain pension plans, with the encouragement of Hall's and/or Hall's Acquisition Corp., may commence litigation against some or all of the Tiger International Companies and asert that Tiger International's sale

sideration motion, much is made of the Override Agreement between plaintiffs and their creditors. Yet, there is nothing to convince this Court that the strict requirements of that agreement yield a different result in arbitration or in court. In either case, a court must rule on actual enforcement and in either case the creditors know that the Funds are attempting to assert Hall's liability against Tiger.[6]

Finally, the Court does not find that the perceptions of customers and competitors create the type of harm created in *T.I.M.E.- DC, Inc. v. New York State Teamsters Pension Fund*, 580 F.Supp. 621 (N.D.N.Y.), *aff'd.*, 735 F.2d 60 (2d Cir.1984) and *Central States, Southeast and Southwest Areas Pension Fund v. T.I.M.E.-DC, Inc.*, 639 F.Supp. 1468, 1478–79 (N.D.Tx.1986). In those cases, the courts were concerned that T.I.M.E.-DC's customers would perceive that the company had gone out of business if pension funds were permitted to assert withdrawal liability. Moreover, competitors could point to the assertion of withdrawal liability as proof that T.I.M.E.-DC was no longer functioning. As against the company that is primarily liable, then, there is a risk that asserting withdrawal liability will lead to the perception that the company is no longer functioning. By contrast, the instant case involves secondary liability. Hall's, the company against whom primary liability is imposed, has clearly reduced operations significantly. Nothing in the assertion of liability against Tiger because of its relationship to Hall's is an indication of Tiger's current ability to do business.

STATUTORY INTERPRETATION

██ Because the Court has reversed itself on the irreparable injury issue, the Court must reconsider whether it should decide Count I under the statutory interpretation exception to the exhaustion doctrine. *See* Op. at 13; *Republic Industries*, 693 F.2d at 293. In the prior opinion, this Court chose not to decide this issue.[7]

The parties' major dispute concerns what needs to be decided to dispose of Count I. Plaintiffs contend that the issue to be decided is whether or not Tiger was an "employer" when Hall's withdrew. The arbitration provision of the MPPAA states that "Any dispute between an *employer* and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title should be resolved through arbitration." 29 U.S.C. § 1401(a)(1) [emphasis added]. Because the arbitration only applies to employers, Tiger argues, a court must first determine whether, as a matter of law, Tiger is an employer before an arbitrator has power to resolve a dispute. *See, e.g., Refined Sugars, Inc. v. Local 807 Labor Management Pension Fund*, 580 F.Supp. 1457 (S.D.N.Y.1984); *Paperworks Pension Plan v. Arlington Sample Book Co.*, 5 E.B.C. 1948 (E.D.Pa.1984).

The Funds, however, view the issue raised in Count I differently. To them, the real issue that needs to be decided concerns the January 1985 transaction in which Tiger sold 75% of Hall's to Hall's Acquisition Corp. ("HAC"), a corporation wholly owned by Alvin Bodford, then Chief Financial Officer of Hall's. The Funds argue that this was a sham transaction whose purpose was to avoid the withdrawal liability. Under 29 U.S.C. § 1392(c):

of Hall's should be disregarded, thereby making the Tiger International Companies jointly and severally liable with Hall's for Hall's MEPPAA withdrawal liability.

**6.** The interim payments for withdrawal liability become due, "[r]egardless of whether [the employer] requests review, initiates arbitration, or seeks court review...." Op. at 7. Again, there is no differences in harm between an arbitration proceeding and a court proceeding.

**7.** In deciding this issue, the Court has referred back to the briefs and arguments the parties made in the original motion to dismiss. As noted in the prior opinion, the Court was reluctant to decide the statutory interpretation grounds because of the difficulty involved in reconciling several Third Circuit cases. *Compare I.U.E. AFL–CIO Pension Fund v. Barker & Williamson*, 788 F.2d 118 (3d Cir.1986) *with Dorn's Transportation v. Teamsters Pension Fund of Philadelphia and Vicinity*, 787 F.2d 897 (3d Cir.1986), and *Warner-Lambert Co. v. United Retail & Wholesale*, 791 F.2d 283 (3d Cir.1986). *See* Op. at 14, n. 8. As discussed, *infra*, the Court now believes that these cases are reconciliable.

If a principal purpose of any transaction is to evade or avoid liability under this part, this part shall be applied (and liability shall be determined and collected) without regard to such transaction.

Significantly, any dispute arising under § 1392 is subject to the arbitration procedures. Therefore, the Funds argue, the issue to be decided belongs before an arbitrator not before the Court.

The Court agrees with the Funds. Prior to the 1985 transaction, Tiger owned 100% of Hall's; therefore, Tiger was indisputably in the "employer" control group of Hall's until the transaction. If that transaction is proven to be one subject to 29 U.S.C. § 1392(c), then the Funds are free to ignore the transaction and assert liability against Tiger. If the transaction is held to be an "evade or avoid" transaction, then Tiger was an "employer" on the date Hall's withdrew. But characterizing the issue to be decided as whether or not Tiger was an "employer" is a broad brush description of a specific issue. The case really turns on the determination of the "evade or avoid" question, a question properly before the arbitrator.

A problem arises because there appears to be an inherent conflict within the arbitration provision. On the one hand, the arbitrator only is to resolve disputes between employers and funds, while on the other, the arbitrator is empowered to resolve the "evade or avoid" issue. The Court cannot think of a situation where the "evade or avoid" situation will arise except when the entity from whom payments are sought no longer owns the entity that actually withdrew. If the arbitrator were only free to decide issues involving an undisputed employer, Congress would not have empowered the arbitrator to decide § 1392(c) disputes.

The present factual submissions and allegations before the Court indicate that there is a genuine factual dispute surrounding the 1985 transaction. For example, the Affidavit of Thomas C. Nyhan, ¶ 5, states that Alvin Bodford, President of Hall's, admitted that a principal purpose of the 1985 sale was to evade or avoid withdrawal liability. Unlike *Dorn's Transportation v. Teamsters Pension Trust Fund of Philadelphia and Vicinity*, 787 F.2d 897 (3d Cir.1986), there is a need in this case to develop a factual record in order to decide the "evade or avoid" question.

It is this need to develop a factual record that distinguishes Tiger's case from the cases plaintiffs cite for the proposition that a court and not an arbitrator should decide Count I.[8] All those cases had an undisputed set of facts on which the court could decide the employer question as a matter of law. By contrast, the facts here need to be resolved before a legal conclusion can be reached. Weighing disputed facts in this context lies in the province of the arbitrator, not the Court.

The Third Circuit Court of Appeals' MPPAA opinions support this view. In *Dorn's Transportation*, the Third Circuit commented, "As this was a rare case in which there was no need for the development of a factual record, we do not believe the district court abused its discretion in denying discovery and bypassing arbitration." 787 F.2d at 903. By implication, in the more usual case where there was a need for the development of a factual record, the district court would have abused its discretion by bypassing arbitration. Similarly, in *Warner-Lambert Co. v. United Retail & Wholesale*, 791 F.2d 283 (3d Cir.1986), the Court held that an arbitrator needed to make the factual determi-

---

**8.** *Central Pennsylvania Teamsters' Pension Fund v. Service Group, Inc.,* 645 F.Supp. 996 (E.D.Pa. 1985), (no factual dispute that two corporations shared employees and therefore both were employers); *American Stevedoring Corp. v. Burlington Industries, Inc.,* No. 85C–4180 (N.D.Ill., August 8, 1985) [Available on WESTLAW, DCT database]; (no dispute as to the relationship of two corporations who shared employers); *Paperworkers Pension Plan v. Arlington Sample Book Co.,* 5 E.B.C.1948 (E.D.Pa.1984), (undisputed affidavits demonstrate that corporations are not under common control); *Refined Sugars, Inc. v. Local 807 Labor Management Pension Fund,* 580 F.Supp. 1457 (S.D.N.Y.1984), (no factual dispute that a corporation was an employer during a period of layoff); *Baldwin v. Shopmen's Ironworkers Pension Fund,* 3 E.B.C. 1713 (C.D.Cal.1982), (no factual dispute that two sole shareholders controlled a corporation).

nations necessary to interpret a collective bargaining agreement before a court could determine the "date of withdrawal" issue.[9]

In dicta in *I.U.E. AFL–CIO Pension Fund v. Barker & Williamson, Inc.*, 788 F.2d 118, 129 (3d Cir.1986), the court stated that a corporation which, "legitimately believes its status as a [MPPAA] controlled group member is doubtful ... could bring a declaratory judgment action to have that question resolved by a federal court." The relevant facts needed for decision in *Barker & Williamson* were undisputed; therefore, this Court believes that the dicta applies only to those situations where there is no dispute of material facts. In a situation where the facts are not in dispute, a court could issue a declaratory judgment with relative ease. Once facts are in dispute, however, the court's task becomes more difficult and intercedes into the proper role of the arbitrator. Such is the case here. The Court, therefore, declines to follow the dicta in *Barker & Williamson* and will refer Count I to arbitration.

PROCESS IN ARBITRATION

Having decided that the Count I determinations should first be made by an arbitrator, the Court must now determine the appropriate procedure. Arbitration proceedings are to be carried out to the extent consistent with the MPPAA, in the same manner as those under Title 9 of the United States Code. Under 9 U.S.C. § 3, a district court has the power to stay court proceedings pending arbitration. In addition to this statutory authorization, a court has equitable powers to stay proceedings pending arbitration. *Gavlick Const. Co. v. H.F. Campbell Co.*, 526 F.2d 777, 784 (3d Cir. 1975) (citing *Landis v. North American Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 165–66, 81 L.Ed. 153 (1936): "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); *Wren Distribu-*

*tors, Inc. v. Phone-Mate, Inc.*, 600 F.Supp. 1576, 1581 (E.D.N.Y.1985).

The Court will apply these powers to stay the court proceedings pending arbitration. During arbitration, the Court will retain jurisdiction over the action. The arbitration should follow the law applicable in the Third Circuit. Under *United Retail & Wholesale Emp. v. Yahn & McDonnell*, 787 F.2d 128, 138–144 (3d Cir.1986), the Third Circuit held that the arbitrator should review trustee determinations on a *de novo* basis to ensure that the employer's case gets a full and fair hearing. Now pending before the Supreme Court is an appeal of *Yahn & McDonnell*. 55 U.S. L.W. 3127 (U.S. August 14, 1986) (No. 86–231). Unless the Supreme Court reverses *Yahn & McDonnell*, the arbitrator should apply a *de novo* standard when he reviews the trustees' determinations. Pending a Supreme Court decision, *Yahn & McDonnell* is the law to be followed in this Circuit.

CLASS CERTIFICATION

Also pending before the Court is plaintiffs' attempt to certify a defendant class action of the pension funds. Plaintiffs' complaint included class action allegations, and the Court heard preliminary arguments on the certification issue at the October 9, 1986 hearing. In order to properly decide the certification question, the parties must present arguments on the F.R.C.P. 23(a) requirements; the type of 23(b) class action that should be certified, if any; and the appropriate notice if a Rule 23(b)(3) class is certified. Decision on certification is deferred until those arguments are made.

EQUITABLE TOLLING

■ The last matter the Court must decide is whether Tiger, by bringing this court action has equitably tolled the statutes of limitations under the MPPAA.[10] Because the Court has decided to refer the matter back to arbitration, it is appropriate for the Court to rule on the issue. The

---

9. In that case, the Third Circuit noted, "the fact that the arbitrator will ultimately have to apply the statutes to the facts it finds does not render these issues inappropriate for arbitration in the first instance." *Warner-Lambert, supra,* 791 F.2d at 288.

10. This matter was discussed in letter memoranda the parties submitted and at the October 9th hearing.

Court finds that the statute of limitations should start to run on the issuance of this Order. By bringing suit in court, Tiger has not rested on its rights and should be free to assert its rights under the statute now that the Court has stayed the matter pending arbitration. *See Republic Industries, Inc. v. Teamsters Joint Council,* 718 F.2d 628, 644 (4th Cir.1983) ("we think it equitable that when Republic has made a not frivolous challenge to the constitutionality of the arbitration process ... the pendency of the litigation should toll the running of the period prescribed in § 1401(a)(1)(B)"), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984); *Terson Co. v. Pension Ben. Guaranty Corp.,* 565 F.Supp. 203, 207 (N.D.Ill.1982).

CONCLUSION

The complicated scheme Congress devised in the MPPAA creates a procedure for determining the withdrawal liability of employers who cease to contribute to multiemployer funds. Only in extraordinary circumstances should a court rule that the parties need not exhaust their administrative remedies. *Republic Industries, supra,* 693 F.2d at 294. On reconsideration, this Court no longer believes that Tiger's situation is an extraordinary one. Arbitration is the appropriate means to resolve Count I.

An Order will enter in conformity with this Opinion.