WARRIOR COAL CO., INC., Plaintiff,

v.

Joseph P. CONNORS, Sr., et al., Trustees,
United Mine Workers of America, 1950
and 1974 Pension Plans, Defendants.

Joseph P. CONNORS, et al., Plaintiffs,

v.

WARRIOR COAL CO., INC., Defendant.

Civ. A. Nos. 85–0372–A, 86–0009–A.

United States District Court,
W.D. Virginia,
Abingdon Division.

Nov. 20, 1986.

John H. Tate, Jr., Marion, Va., and R. Kenneth Wheeler, Richmond, Va., for plaintiff.

Stuart B. Campbell, Jr., Wytheville, Va., Gary M. Ford, Terrence M. Deneen, Mary Balent Long, William F. Hanrahan, Gerald E. Cole, Jr. and Israel Goldowitz, Washington, D.C., for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

The plaintiff, Warrior Coal Company, Inc. (Warrior) commenced this declaratory judgment suit on November 20, 1985 seeking a declaration that the defendants', Trustees of the United Mine Workers of America 1950 and 1974 Pension Plans (Trustees), assessment of withdrawal liability against Warrior was invalid. Subsequently, Warrior moved for summary judgment and in so doing raises two grounds: that it is not an employer with respect to the 1950 Plan and that if it is an employer, the incurring of liability under the 1950 Plan is unconstitutional in application because it violates Warrior's due process rights. Trustees claim this court is without jurisdiction to decide the issues and request this court to remand the case to arbitration in accordance with 29 U.S.C. § 1401.

## I.

### BACKGROUND

Warrior, a Virginia corporation, was formed in October 1981 to strip coal for Clinchfield Coal Company in Russell County, Virginia. As such, Warrior became signatory to the National Bituminous Coal Wage Agreement of 1981. By virtue of the Wage Agreement, Warrior incurred a responsibility and obligation to contribute to the 1950 and 1974 Pension Plans.[1] Warrior paid all amounts due during its period of operation. Warrior's mining operations, however, continued only approximately two (2) years because coal seam conditions at the mine developed which made strip mining "prohibitively expensive." Reclamation efforts continued until July 1984.

After Warrior ceased all operations in July 1984, the Plans determined that Warrior had completely withdrawn from the Plans within the meaning of the Employee Retirement Income Security Act of 1974 (ERISA), as amended by the Multi-employer Pension Plan Amendment Act of 1980 (MPPAA), Section 4203(a)(1), 29 U.S.C. § 1383(a)(1) and determined that Warrior's withdrawal liability was $106,073.77 to the 1950 Plan and $30,712.57 to the 1974 Plan. 29 U.S.C. § 1399(c) requires Warrior to pay the withdrawal liability to the Plans in monthly installments. On November 20, 1985, Warrior filed the present action seeking a declaratory judgment that it is not liable to the Plans for the withdrawal liability. Warrior's answer asserts the following defenses: (1) that it is not an employer with respect to the Plans, (2) "the statutory employer in the relationship between Warrior and the Plans has not withdrawn," (3) the so-called *de minimis* provision of ERISA section 4209, 29 U.S.C. § 1389, applies to the Plans, and (4) section 4211 of ERISA, 29 U.S.C. § 1391, requires the Plans, in calculating Warrior's withdrawal liability, to exclude amounts contributed "by an entity other than Warrior for which Warrior was not responsible."

On December 10, 1985, before the Plans were served in the present action, the

1. Under the terms of Article XX of the Wage Agreement, each signatory employer is obliged to make contributions to the 1974 Plan based upon (1) hours worked by each employee covered by the Wage Agreement and (2) tons of coal produced by the employer; while each signatory employer is obliged to make contributions to the 1950 Plan based solely upon tons of coal produced by the employer.

Plans filed a complaint in the District Court for the District of Columbia seeking an injunction requiring Warrior to make interim withdrawal liability payments to the Plans. After the Plans were served in this action, they filed a notice of the pendency of this related case with the District of Columbia court, and the District of Columbia court transferred the Plans' action to this court where the court consolidated it with Warrior's action. On June 11, 1986, this court ordered Warrior to begin making interim withdrawal liability payments to the Plans. Warrior has complied with the payment schedule set forth by the court. The case is now before this court on Warrior's motion for partial summary judgment.

## II.

### OPINION

Warrior moves this court to grant summary judgment with respect to the Plans' assessment of withdrawal liability to the 1950 Plan. Warrior contends that summary judgment is appropriate because it is not an "employer" with respect to the 1950 Plan and alternatively that the MPPAA is unconstitutional as applied to Warrior. The Trustees, on the other hand, contend that this court may not entertain Warrior's motion because Warrior has a statutory obligation to submit the issues to arbitration before it can proceed in a federal district court. 29 U.S.C. § 1401. Warrior acknowledges the general prerequisite requiring arbitration before being able to seek redress in a federal court, but contends that the section applies only to the determination and amount of withdrawal liability imposed. Warrior argues that because it raises an issue of statutory construction and a constitutional challenge, 29 U.S.C. § 1401 is inapplicable and, therefore, arbitration is not a prerequisite. Because Warrior raises two grounds of defense in support of summary judgment, this court must find that it has jurisdiction to reach the merits of each claim even though the parties have not submitted the issues to arbitration. Therefore, before this court can render a decision on the merits, this court must first decide whether it has authority to decide each of Warrior's claims.

## III.

### MAY THIS COURT DECIDE THE STATUTORY INTERPRETATION QUESTION WITHOUT FIRST HAVING THE PARTIES SUBMIT TO ARBITRATION?

█ This court is of the opinion that Warrior may present its statutory interpretation claim for resolution in this court without having first submitted the issue to arbitration. Several circuits have addressed this issue and held that the parties may bypass arbitration when the district court faces only questions of statutory interpretation. *Dorn's Transportation, Inc. v. Teamsters Pension Trust Fund of Philadelphia and Vicinity,* 787 F.2d 897 (3d Cir.1986); *T.I.M.E.–DC, Inc. v. Management-Labor Welfare & Pension Funds of Local 1730 International Longshoremen's Association,* 756 F.2d 939 (2d Cir.1985); *I.A.M. National Pension Fund Benefit Plan C v. Stockton Tri Industries,* 727 F.2d 1204 (D.C.Cir.1984).

*Stockton* involved a court's interpretation of a statute which defined when complete withdrawal from a fund occurs. Stockton informed I.A.M. by telegram on April 14, 1980 that it would make no more contributions as of April 30, 1980. However, Stockton made an additional payment to the Fund in May 1980 to fulfill its contractual obligations. Because the provisions of MPPAA permitted the imposition of withdrawal liability against all pension plan members withdrawing after April 29, 1980, the date of complete withdrawal became the central issue. On appeal, the D.C. Circuit held "[b]ecause Congress has not clearly stated in MPPAA that a court cannot decide an issue without first requiring arbitration, we conclude that arbitration under MPPAA is not a statutorily specified jurisdictional prerequisite." *Id.* at 1208. The D.C. Circuit went further to

explain why the instant situation did not require arbitration.

Because we find that requiring arbitration will neither lead to the application of superior expertise nor promote judicial economy, we conclude that, as a prudential matter, the district court correctly proceeded to the merits.

First, we note that the issue before the district court was purely one of statutory interpretation.... Because there are neither questions of fact nor issues of contractual interpretation to resolve, an arbitrator skilled in pension and labor matters would have no superior expertise to offer.

Second, under the specific circumstances present here, it is unlikely in the extreme that requiring arbitration will promote judicial economy by resolving extrajudicially the dispute between Stockton and the Fund. Under the statute both the Company and the Fund are entitled to bring an action to vacate the arbitrator's award. 29 U.S.C. § 1401(b)(1). In a dispute like this one, it seems highly improbable that a judicial action to vacate the award will not immediately follow on the heels of the arbitrator's decision. Second, requiring exhaustion under the circumstances presented here would not promote judicial economy even in the short-term.

*Id.* at 1209–10. (footnotes omitted).

Because Warrior's claim that it is not an "employer" is purely a question of statutory interpretation involving neither questions of fact[2] nor issues of contractual interpretation, the parties may bypass arbitration in the instant case. Likewise, submitting the statutory interpretation issue to arbitration would not promote judicial economy. Implicit in this statement is the fact that the district court accords the arbitrator's statutory interpretation decision little weight since it involves no issues of

disputed facts and in essence conducts a *de novo* review. This procedure lengthens and prolongs the awaited finding rather than promotes judicial economy. *See T.I. M.E.DC,* 756 F.2d at 945; *Dorn's Transportation,* 787 F.2d at 903.

The Fourth Circuit has never addressed this specific question of whether the parties may bypass arbitration in deciding questions of statutory interpretation. However, the Fourth Circuit's most prominent MPPAA decision, *Republic Industries, Inc. v. Teamsters Joint Council No. 83 of Virginia Pension Fund,* 718 F.2d 628 (4th Cir.1983), lends guidance to this court's decision. In *Republic* the Fourth Circuit held that arbitration was not a prerequisite before the district court could decide a constitutional challenge, but that arbitration was a prerequisite before the district court could properly proceed to decide "the question of whether the Hull Street terminal was a 'facility' within the meaning of § 1397(a)." *Id.* at 634. Arbitration was necessary on the "facility" issue because the issue was "at least in part a factual one which under the 1980 Act must be decided by arbitration." *Id.* The Fourth Circuit found the situation presented "a nice question of fact and law" which required submission of the issue to arbitration before the district court could rule on it. *Id.* at 635. This court, therefore, finds that it may hear and decide Warrior's claim, that it is not an employer under 29 U.S.C. §§ 1381–1405, because it involves no question of fact.

## IV.

## MAY THIS COURT DECIDE THE CONSTITUTIONAL CHALLENGE WITHOUT FIRST HAVING THE PARTIES SUBMIT TO ARBITRATION?

■ At first blush, the law seems apparent that Warrior may litigate its constitu-

---

2. The facts of this case present a unique situation. The question of statutory interpretation does not involve issues of fact (disputed or otherwise). The statutory interpretation question is dependent upon the Legislature's intent. A favorable ruling for Warrior on the statutory

interpretation question moots the constitutional challenge. However, an unfavorable ruling for Warrior on the merits of the statutory interpretation issue necessitates that either this court or the arbitrators decide the constitutional issue which involves questions of fact.

tional challenge in this district court without first submitting its claims to arbitration. However, previous cases have consistently differentiated between facial challenges and as applied challenges. *Patlex Corp. v. Mossinghoff,* 771 F.2d 480 (D.C. Cir.1985), recites the general rule with respect to bringing a facial challenge as compared to bringing an as applied constitutional challenge.

A party bringing a facial challenge to agency rules or regulations may not need, in certain circumstances, ... to exhaust administrative remedies, *Republic Industries, Inc. v. Central Pennsylvania Teamsters Pension Fund,* 693 F.2d 290, 296 (3d Cir.1982), in order to bring a facial challenge. But the general rule is that the requirements of finality and exhaustion are not waived with respect to "as applied" challenges, in which the litigant contests the application of the provision to his situation. This is in part due to judicial economy, and in part due to the need for a well developed record including appropriate findings of fact in order for a court to decide whether a particular provision had been applied to specific facts. *Federal Trade Commission v. Standard Oil Co. of California,* 449 U.S. [232], 239–245, 101 S.Ct. [488], 493–496, 66 L.Ed.2d 416.

*Id.* at 488.

Courts have applied this general rule when dealing with arbitration under 29 U.S.C. § 1401. *See Terson Company, Inc. v. Bakery Drivers and Salesmen Local 194,* 739 F.2d 118, 121 (3d Cir.1984) (The basis of Terson's as applied challenge is not apparent from the published decision.); *Republic Industries, Inc. v. Central Pennsylvania Teamsters Pension Fund,* 693 F.2d 290, 296 (3d Cir.1982) (holding that exhaustion of arbitration procedure is not necessary before the district court could consider a facial constitutional challenge); *See also, Republic Industries, Inc. v. Teamsters Joint Council No. 83 of Virgin-*

*ia Pension Fund,* 718 F.2d 628, 634 (4th Cir.1983). But, this court is unaware of any cases that have actually decided the question of whether a plaintiff may or may not maintain an as applied constitutional challenge to the MPPAA. If this court were to adhere strictly to the general rule, it would be unable to hear and decide Warrior's constitutional claim, but before this court follows the general rule in this particular situation, it will examine other considerations.

Warrior contends that even though this is an as applied challenge, no facts are in dispute and that the constitutional issue (albeit an as applied challenge) is not arbitrable because 29 U.S.C. § 1401 applies only to the determination of withdrawal liability. Therefore, Warrior contends that this court may hear and decide its constitutional claim. Warrior first contends that no facts are in dispute and that remanding to arbitration would not promote judicial economy nor develop an in-depth record including appropriate findings of fact which would enable a court to decide the issue. Warrior's particular due process claim rests upon the fact that it has to pay withdrawal liability to the 1950 Plan—a Plan from which Warrior claims none of its employees would ever receive benefits. Because Warrior's claim is not dependent upon the amount of withdrawal liability payable to the 1950 Plan,[3] Warrior claims no facts are in dispute and that the issue is not arbitrable. Warrior's claim is welltaken and if in fact it had no employees who could ever receive benefits under the 1950 Plan, then this court could reach the merits of Warrior's claim. The Trustees, however, claim that Warrior has failed to establish that none of its employees would ever receive benefits under the 1950 Plan. If Trustees' claim is correct, then there remains a disputed question of fact. The terms of the 1950 Plan determines whether any of Warrior's employees would ever re-

---

**3.** Warrior claims that any imposition of withdrawal liability, no matter how small, violates due process when it has no employees who could ever receive any benefits from the 1950

Plan. Therefore, Warrior does not challenge the amount of liability, but the mere imposition of liability.

ceive benefits under the 1950 Plan. This calls for this court to interpret and apply the UMWA 1950 Pension Plan. This situation appears to be the very type of contractual dispute that Congress contemplated the parties should submit to arbitration for resolution and interpretation. Because the arbitrators have superior expertise in understanding and interpreting contractual provisions, this court should remand to arbitration. Either party may thereafter challenge the arbitrator's decision on the constitutional issue in this court, and this court in evaluating the claim will have the benefit of the record developed at arbitration.

*Republic Industries v. Teamsters Joint Council No. 83 of Virginia Pension Fund* contains language indicating that this court could hear Warrior's constitutional claim. In *Republic Industries,* the Fourth Circuit adopted extensive portions of *Shelton Framing Corp. v. Pension Benefit Guaranty Corp.,* 705 F.2d 1502 (9th Cir.1983) and wrote:

> The court noted that the arbitration provisions of the 1980 Act were limited to "disputes involving a determination ... [of] the establishment, computation and collection of withdrawal liability." Thus, they do not apply "where the constitutionality of the statute, not the establishment or amount of withdrawal liability, is at issue." *Id.* at 1509. It also recognized that the expertise of an arbitrator would not go to the constitutional issue and therefore "[a]rbitration would neither develop a better record for adjudication of the constitutional issues nor eliminate the need to consider the constitutional challenge." *Id.* at 1509. We agree and rest on their authority.

*Republic Industries,* 718 F.2d at 635. Concededly, this supports Warrior's position that it can bypass arbitration and present its constitutional claim to this court. However, both *Republic Industries* and *Shelter Framing Corp.* involved facial

challenges rather than as applied challenges. One basis for the courts' opinions was that the expertise of an arbitrator would not go to the constitutional issue. While the expertise of an arbitrator might not go to the as applied constitutional challenge in the instant case, there are preliminary determinations that potentially would affect a court's decision. Because of the arbitrator's expertise in the area of union contracts and pension plans, the arbitrators should decide the preliminary matters. After balancing the Funds' interest in applying its expertise in the area of contract interpretation, having a proper record developed at arbitration and maintaining an efficient, independent administrative system that does not inhibit the decision making process with the interest of Warrior in receiving adequate and prompt redress, this court concludes that *Republic Industries* would not allow Warrior to bypass arbitration in this instance.

■ Lastly, Warrior contends that this court should construe 29 U.S.C. § 1401[4] very narrowly. In essence, Warrior would have this court hold that "determination" applies only to the amount of liability but not to the imposition or assessment of liability. The language of § 1401, however, provides that "[a]ny dispute" arising "under sections 1381 through 1399" shall be resolved through arbitration. There is no indication that Congress intended to limit arbitration simply to the amount of liability. This court recognizes that arbitration is not a statutorily specified jurisdictional prerequisite, *Stockton,* 727 F.2d at 1208, and that in certain instances, the parties may bypass arbitration. However, in the instant action which involves disputed facts and issues of contractual interpretation (UMWA 1950 Pension Plan and the National Bituminous Coal Wage Agreement of 1981), the parties may not bypass arbitration to present their constitutional challenge.

---

**4.** 29 U.S.C. § 1401(a)(1) provides in part:
Any dispute between an employer and the plan sponsor of a multiemployer plan con-

cerning a determination made under section 1381 through 1399 of this title shall be resolved through arbitration.

## V.

## IS WARRIOR AN EMPLOYER WITH RESPECT TO THE 1950 PLAN?

■ Having held that this court can hear Warrior's statutory interpretation claim, this court now proceeds to decide the merits of that claim.[5] Warrior's basis for partial summary judgment is that Warrior is not an "employer" with respect to the 1950 Plan. Warrior urges this court to interpret "employer" with respect to a particular plan to mean only those companies that have or had employees who could receive benefits under that particular plan. (In the instant case, it would refer to receipt of benefits under the 1950 Pension Plan.) In support of their contention, Warrior notes that the purpose of MPPAA's withdrawal liability provisions was to ensure that employers bear their fair share of the plan's responsibilities. Warrior bases this conclusion on excerpts from Senator Dole's statement before the Senate. Dole stated, "[t]hese dual concerns have led to an effort to assure that each employer who agrees to provide retirement benefits for his employees through a multiemployer plan will, in fact, pay his fair share of the plan's liabilities." 126 CONG.REC. S10103 (daily ed. July 29, 1980) (Statement of Sen. Dole). Therefore, according to Warrior's argument, an "employer" for the purpose of withdrawal liability is only an employer who must contribute for an unfunded amount because it has employees who are or will receive benefits under the Plan.

■ Neither the Congressional Record nor the text of MPPAA supports Warrior's claim. First, the MPPAA does not contain any reference that "employer" is defined in this unprecedented manner. It seems apparent that if Congress wished "employer" defined in this novel way, Congress would have made appropriate indications. This court should accord the language in Congress' legislation its ordinary meaning absent some indication to the contrary. *National Labor Relations Board v. Coca Cola Co.*, 350 U.S. 264, 268–69, 76 S.Ct. 383, 385–86, 100 L.Ed. 285 (1956); *United States v. Fordyce*, 192 F.Supp. 93, 94 (S.D. Calif.1961); *Reliable Volkswagen Sales & Service Co. v. World-Wide Automobile Corp.*, 216 F.Supp. 141, 143 (D.N.J.1963). Additionally, Congress proceeded to implement a method of computing withdrawal liability which in its estimation would result in each employer paying its fair share of a plan's unfunded liabilities. 29 U.S.C. § 1391. The complex method of calculating withdrawal liability evidences Congress' intention that use of § 1391 to compute the withdrawal liability would achieve fairness.

Even more important, the Congressional Record indicates that the Act imposes withdrawal liability not only to cover the amount of the withdrawing employer's unfunded liability but also to cover its fair share of any unfunded liability not represented by a participating employer. "The amount of this liability is his share of the amount which is necessary to fund retirement benefits but which has not yet been contributed." 126 CONG.REC. S10103 (daily ed. July 29, 1980) (Statement of Sen. Dole). Obviously, not all liability is funded. More importantly, the Plan is unable to

---

**5.** It is important to note that Warrior intertwines its statutory interpretation and constitutional challenge claims. Warrior repeatedly contends that it is not an employer with respect to the 1950 Plan because it had no employees who would receive benefits under the 1950 Plan; a contention that this court has already held Warrior has not established. However, Warrior would have this court consider this alleged factual situation in reaching a decision on the statutory interpretation claim.

Whether Warrior had any employees who would receive benefits under the 1950 Plan is not important to the court's initial decision.

This court merely attempts to interpret Congress' intention as to the meaning of "employer" as used in 29 U.S.C. §§ 1381–1405. Whether Warrior had any employees who would qualify for benefits under the 1950 Plan becomes important only in applying this court's construction. It is not important to the statutory construction issue but is important to the statutory construction's application to and effect on Warrior. This is in essence Warrior's constitutional challenge. However, Warrior must await this court's construction of "employer" before its claim has any significance.

associate all unfunded liability with a current contributing employer. If the Plans could associate all unfunded liability with a current contributing employer, then Warrior's argument would carry more weight. That the Plans cannot associate all unfunded liability with a current contributing employer occurs because in some instances there never was a contributing employer for certain liabilities and in some instances a contributing employer withdrew leaving unfunded amounts but paying no withdrawal liability because its withdrawal preceded the enactment of MPPAA. Under MPPAA a withdrawing employer has a responsibility to contribute its fair share of *all unfunded liabilities* not just its fair share as represented by the liability associated with its employees. Whether the withdrawal liability is attributable to the employer's employees is irrelevant for purposes of defining employer under 29 U.S.C. §§ 1381–1405. The employer's fair share is calculated under 29 U.S.C. § 1391. Warrior's statutory construction argument must fail as Warrior is an employer under the provisions of 29 U.S.C. § 1401.

For the foregoing reasons this court holds that Warrior is an "employer" with respect to 29 U.S.C. §§ 1381–1405 and will enter an appropriate Order remanding the case to arbitration and staying all further action in this court until completion of arbitration.