WARNER-LAMBERT CO., INC.
Appellant in No. 83–1682,

v.

UNITED RETAIL AND WHOLESALE EMPLOYEE'S TEAMSTER LOCAL NO. 115 PENSION PLAN, Appellant in No. 83–1676.

Nos. 83–1676, 83–1682.

United States Court of Appeals,
Third Circuit:

Argued March 21, 1985.
Decided May 30, 1986.

Jacob P. Hart (argued), Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for Warner-Lambert.

Terence G. Craig (argued), David F. Flower, Baruch A. Fellner, Washington, D.C., for amicus curiae, Pension Ben. Guar. Corp.

Paula R. Markowitz (argued), Richard H. Markowitz, Markowitz & Richman, Philadelphia, Pa., for Local No. 115 Pension Plan.

Before SEITZ and HIGGINBOTHAM, Circuit Judges, and WEBER, District Judge.[*]

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

### I.

The Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), Pub. L. No. 96–364, 1980 U.S.Code Cong. & Ad. News (94 Stat.) 1208 (amending the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461 (1982)), was enacted out of a concern that ERISA did not adequately protect multiemployer pension plans from the adverse consequences that result when individual employers terminate their participation or withdraw. *See Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984).

MPPAA addressed this problem by requiring a withdrawing employer to pay the share of the pension's unvested liability that was attributable to that employer's participation. The "withdrawal liability" provisions were effective retroactively to April 29, 1980, approximately five months before the statute was enacted into law on September 26, 1980.

The procedure set forth in MPPAA for the determination of withdrawal liability commences with the trustees' determination that a withdrawal has in fact occurred. (Half the trustees are named by the employer, and half by the union.) After such a determination is made, the trustees are required to compute the amount of withdrawal liability to be assessed against the employer. 29 U.S.C. §§ 1381–1390. The statute sets forth four methods of computing the amount of withdrawal liability, 29 U.S.C. § 1391. Once a formula is selected by a plan, it applies to every employer withdrawing from the plan. If a pension fund does not affirmatively act to adopt one of the methods enumerated in the Act, the plan is deemed to have adopted the "presumptive method". *Id.* § 1391(d). Under the "presumptive method", which is the formula selected by the trustees in this action, liability is determined by multiplying the plan's unfunded vested liability (UVB) by a fraction whose numerator is the sum of all contributions by the employer during the five years last preceding withdrawal and whose denominator generally consists of the sum of all contributions made by all employers in the plan during the last five years preceding withdrawal. *Id.* § 1391(c)(3). The employer may request that the trustees review their decision as to the assessment of withdrawal liability, *id.* § 1399(b)(2)(A), or the employer may request arbitration of the matter. *Id.* § 1401. If the matter proceeds to arbitration, any determination made by the trustees is presumed correct unless the party contesting the determination shows

---

[*] Honorable Gerald J. Weber, United States District Court for the Western District of Pennsylvania, sitting by designation.

by a preponderance of the evidence that the determination was unreasonable or clearly erroneous. *Id.* § 1401(a)(3). In the event that an employer is dissatisfied with the outcome of the arbitration, an action to vacate or modify the arbitration award may be commenced in federal district court. *Id.* § 1404(b). In such a proceeding, findings of fact made by the arbitrator are presumed correct and may be rebutted only by a clear preponderance of the evidence. *Id.* § 1401(c).

The undisputed issues of material fact in this case may be summarized as follows. During the early 1970's, Lactona Corporation ("Lactona"), a subsidiary of Warner-Lambert, assumed control of Universal Dental Company ("Universal") and began to operate Universal's factory in Philadelphia. Prior to January 16, 1970, Universal maintained its own pension plan for its employees. Pursuant to a collective bargaining agreement signed on that date, Universal transferred the assets of its pension fund to the defendant, United Retail and Wholesale Employee's Teamster Local No. 115 Pension Plan ("the Plan"). After Lactona assumed control of Universal, Lactona continued to make payments to the Plan. On July 15, 1978, Lactona and Teamster Local No. 115 signed a new collective bargaining agreement governing employees at the Philadelphia factory. The agreement was to remain in effect until July 15, 1980.

In June of 1980 Lactona informed the Union that Warner-Lambert had decided to divest itself of the operation. Shortly thereafter, an individual named Paul Albright indicated an interest in purchasing Lactona. On July 15, Lactona and the Union entered into a "letter agreement" designed to facilitate the Albright purchase, in which the Union agreed to certain wage and benefit concessions. The letter agreement also provided that the 1978 collective bargaining agreement would remain in effect until the Albright transaction was either consummated or abandoned. The Albright transaction fell through, and no other buyer was found.

The letter agreement provided that if the Albright transaction was not completed "Lactona Corp., will upon one week's notice, cease operations of the plant and negotiate with [the] Union some form of a severance payment." On September 19, 1980, one week before MPPAA was signed into law, Warner-Lambert closed its Philadelphia dental products manufacturing plant. Lactona unilaterally declared that it would provide one week's pay—through September 26, 1980—in lieu of notice. Lactona entered into an agreement to sell the equipment at the plant to the plant manager. Pickets, which prevented the removal of the equipment, went up on September 19th. On November 15, 1980, the Union and Lactona reached an agreement, under which the picketing was ended in exchange for specified severance pay.

By letter dated November 6, 1981, the Plan made a demand upon Warner-Lambert for payment of its withdrawal liability under MPPAA. Warner-Lambert's liability to the Plan was assessed at $1,417,533.00. On March 10, 1982, Warner-Lambert filed this action challenging the constitutionality of the MPPAA and seeking declaratory and injunctive relief. The complaint alleged, *inter-alia,* that: (1) "[t]aken together, the influence of the plan sponsor in determining the original assessment, the evidentiary presumption in favor of the plan sponsor's calculations, and the fact that liability and the possibility of default mount throughout any challenge to an assessment, render the [MPPAA] enforcement scheme a violation of the plaintiff's right to due process"; (2) "[MPPAA] takes the plaintiff's property, including the property right of its collective bargaining relationship with the Teamster Local 115, without due process of law, by retroactively and arbitrarily imposing upon the plaintiff liability for unfunded vested benefits inherited from other employers who withdrew from [the Plan] prior to the enactment of [MPPAA] and for unfunded vested benefits for employees who have never worked for the plaintiff"; (3) by "effectively abrogating" limits on the employer's liability to the Plan set by the 1978 collective bargaining agreement, "the en-

actment of [MPPAA] constituted a taking of the plaintiff's property without just compensation"; and (4) "[MPPAA] violates the Seventh Amendment to the United States Constitution, since it permits the defendant to assert an alleged legal right to withdrawal liability through arbitration procedures which deny the plaintiff the right to a jury trial."

In an opinion and order entered August 10, 1983, the district court rejected the plaintiff's contention that MPPAA was facially unconstitutional as to the initial procedures for calculating withdrawal liability and the ensuing presumption of correctness, but dismissed, without prejudice to arbitration of the issue, the claim of actual bias in this case. The court also rejected the arguments that plaintiff was denied its right to a jury, or deprived of property without due process or just compensation, to the extent the statute operated prospectively. The court did, however, declare that MPPAA was facially unconstitutional insofar as it imposed retroactive withdrawal liability on employers who withdrew from multiemployer plans prior to its enactment. The district court also left to arbitration the question of the actual date of Warner-Lambert's withdrawal from the plan. (It was disputed whether the withdrawal had in fact taken place prior to the enactment of MPPAA.) Warner-Lambert appealed, and the Plan cross-appealed on the retroactivity issue. On November 4, 1983, this Court stayed consideration of this case pending the Supreme Court's decision in *R.A. Gray & Co., supra,* which was filed June 18, 1984. After oral arguments, we again ordered this case held under advisement pending Supreme Court disposition of *Connolly v. Pension Benefit Guaranty Corp.,* —— U.S. ——, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986). That case was decided February 26, 1986. This matter is now ripe for decision.

## II.

The rapid development of the law in this area has greatly simplified the issues in this case. The Plan's cross-appeal on the retroactivity issue has been mooted by the Deficit Reduction Act of 1984, Pub. L. No. 98–369, § 558, 1984 U.S. Code Cong. & Ad. News (98 Stat.) 494, 899, which eliminated MPPAA's retroactive features by making September 26, 1980 the effective date of MPPAA, except where an employer is, on that date, party to a binding agreement to withdraw, in which case the effective date is December 31, 1980. (The Supreme Court had, prior to the Deficit Reduction Act, but after the district court decided this case, ruled that the retroactivity of MPPAA did not violate due process. *R.A. Gray & Co., supra.*) The remainder of Warner-Lambert's facial challenges to the constitutionality of MPPAA, except that relating to the trustees' calculation of withdrawal liability and the presumption of correctness, were decided adversely to it in *Terson Co. v. Bakery Drivers and Salesmen Local 194,* 739 F.2d 118 (3d Cir. 1984). (In *Connolly v. Pension Benefit Guaranty Corp., supra,* the Supreme Court also rejected the uncompensated "taking" claim.) Warner-Lambert has not pressed these contentions. Nor does it press its contention that the district court erred in deferring the issue of actual bias in the calculation of withdrawal liability. Recently, however, in *United Retail & Wholesale Employees Teamster Union Local No. 115 Pension Plan v. Yahn & McDonnell, Inc.,* 787 F.2d 128 (3d Cir.1986), this Court ruled that MPPAA's withdrawal liability provisions *are* facially violative of due process because of the inherent bias of the trustees, their "wide discretion," and because their determination of liability is deferentially reviewed in arbitration and in district court. We further held that the statute's constitutionality could be "rescued" by eliminating only the requirement that the arbitrator deferentially review the trustees' calculation. We are bound by this decision. Third Circuit Internal Operating Procedures, Chap. 8(C). *Yahn & McDonnell* clearly requires that the judgment of the district court be reversed insofar as it declared these provisions facially constitutional in arbitration proceedings. In view of the fact that *Yahn & McDonnell* is at odds with the five

other circuits that have considered the issue, slip op. at 17, however, we will stay our mandate pending the running of the time for filing an appeal or petition of writ of certiorari from that decision and, if such appeal or petition is filed, until final disposition thereof.

The only issue remaining in this appeal, then, is Warner-Lambert's contention that the district court erred in deferring the "date of withdrawal" question to arbitration. This issue has taken on added dimension in light of the Deficit Reduction Act, because if Warner-Lambert is correct in its contention that it withdrew on September 19, 1980, then it would not be subject to MPPAA at all. (Warner-Lambert alternatively argues that as of September 26 it was party to an agreement to sell all equipment from the plant, constituting a binding agreement to withdraw, in which case December 31, 1980 would, under the Deficit Reduction Act, be the effective date for MPPAA liability.) It is the Plan's contention that under the collective bargaining agreement Warner-Lambert could not unilaterally close the plant without one week's notice, and therefore operations did not cease until September 26th.

In *Republic Industries v. Central Pennsylvania Teamsters Pension Fund*, 693 F.2d 290 (3d Cir.1982), we held that arbitration constituted an administrative remedy under MPPAA, and that judicial review of MPPAA claims would not normally be available until the administrative remedies are exhausted. 693 F.2d at 294–95. In that case we also held, however, that exhaustion would *not* be required to the extent a claimant challenges the facial constitutionality of the statute. 693 F.2d at 296. Thus, there is no dispute here that the

district court correctly decided the facial claims without deferring to arbitration. Nor does Warner-Lambert contend that the date of withdrawal issue comes within the rule of *Republic Industries.* Rather, it contends that the issue comes within a traditional exception to the exhaustion requirement—*i.e.*, the exception for issues of "pure" statutory construction. *See Bradshaw v. Carlson*, 682 F.2d 1050 (3d Cir. 1981). According to Warner-Lambert, its case turns entirely on construction of 29 U.S.C. § 1383(a) [1] and § 558 of the Deficit Reduction Act.[2]

Warner-Lambert contends that it is a simple question of statutory construction whether its "permanent cessation" of operations on September 19, 1980 effected a "complete withdrawal" under MPPAA. Similarly they contend that it is only a question of statutory construction whether its agreement to sell all equipment of the facility constitutes a binding agreement to withdraw from the Plan "since its obvious purpose was to dismantle (and, hence, cease) all of Lactona's operations covered by that plan."

Warner-Lambert's contentions assume the very factual conclusions the district court left for arbitration. It is all well and good to state that Warner-Lambert's "permanent cessation" of operations on September 19, 1980 constituted a "complete withdrawal" under MPPAA, but that begs the question whether there was, in fact, a permanent cessation on that date. The Plan contends that Warner-Lambert could not cease operations without giving one week's notice, and that therefore the closing occurred no earlier than September 26, 1980. This involves construction of a col-

1. For purposes of this part, a complete withdrawal from a multiemployer plan occurs when an employer—
   (1) permanently ceases to have an obligation to contribute under the plan, or
   (2) permanently ceases all covered operations under the plan.

2. (a)(1) Any withdrawal liability incurred by an employer pursuant to part 1 of subtitle E of title IV of the Employee Retirement Income Security Act of 1974 (29 U.S.C. § 1381 et

seq.) as a result of a complete or partial withdrawal of such employer from a multiemployer plan before September 26, 1980, shall be void.
. . . .
(d) In the case of an employer who, on September 26, 1980, has a binding agreement to withdraw from a multiemployer plan, subsection (a)(1) shall be applied by substituting 'December 31, 1980' for 'September 26, 1980.'

lective bargaining agreement, not a statute. Such contractual interpretation requires determinations of fact that we believe are well within the province of an arbitrator. Similarly, Warner-Lambert's § 558 argument assumes that it had a binding agreement to withdraw from the Plan. Clearly, issues of fact remain as to whether its agreement was indeed binding, and whether its execution necessarily would result in withdrawal from the plan by December 31, 1980. The fact that the arbitrator will ultimately have to apply the statutes to the facts it finds does not render these issues inappropriate for arbitration in the first instance. Accordingly, we will affirm the judgment of the district court insofar as it deferred the "date of withdrawal" issue to arbitration.

## CONCLUSION

No. 83–1676, in which the Plan challenged the district court's invalidation of MPPAA's retroactive features, will be dismissed as moot. In No. 83–1682, we will reverse and remand insofar as the district court's judgment is inconsistent with *Yahn & McDonnell,* and affirm in all other respects. Our mandate in 83–1682 will be stayed pending possible Supreme Court review of *Yahn & McDonnell.*