**PENN ELASTIC COMPANY, Appellant in No. 83–1788,**

v.

**UNITED RETAIL AND WHOLESALE EMPLOYEES UNION, LOCAL 115 JOINT PENSION FUND an Unincorporated Association, Appellant in No. 83–1801.**

**Nos. 83–1788, 83–1801.**

United States Court of Appeals, Third Circuit.

Argued March 21, 1985.

Decided May 30, 1986.

John Markle, Jr., John Chesney (Argued), Drinker, Biddle & Reath, Philadelphia, Pa., for Penn Elastic.

Richard H. Markowitz, Paula R. Markowitz (Argued), Markowitz & Richman, Philadelphia, Pa., for Local No. 115 Joint Pension Fund.

Before SEITZ and HIGGINBOTHAM, Circuit Judges, and WEBER, District Judge.*

**OPINION OF THE COURT**

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

I.

This case, like *Warner-Lambert Co. v. United Retail and Wholesale Employee's*

---

* The Honorable Herbert N. Maletz, Judge, U.S. Court of International Trade, sitting by designation.

* Honorable Gerald J. Weber, United States District Court for the Western District of Pennsylvania, sitting by designation.

*Teamster Local No. 115 Pension Plan,* 791 F.2d 283, also decided this day, involves challenges to the constitutionality of the Multiemployer Pension Plan Amendments Act of 1980, Pub.L. 364, 94 Stat. § 1208 ("MPPAA"). The relevant provisions of MPPAA are fully discussed in *Warner-Lambert.* In No. 83–1788, an appeal from the dismissal of Penn Elastic's complaint, we must take the following well-pleaded facts as true: In 1972, Penn Elastic Company's hourly rate employees elected Local 115 of the United Retail and Wholesale Employees Union (the "Union") as their collective bargaining representative. As part of its first collective bargaining agreement with the Union, Penn Elastic agreed to discontinue its own single-employer benefit pension plan, and to participate in the Union's joint pension fund (the "Fund"), the defendant below.

In furtherance of this agreement, Penn Elastic transferred $337,993.31 from its single-employer pension plan to the Fund, and entered into a Trust Agreement with the Union. This Trust Agreement embodied, *inter alia,* Penn Elastic's agreement to contribute to the Fund such amounts as might be determined by Penn Elastic's collective bargaining agreements with the Union. This agreement was Penn Elastic's sole undertaking to contribute to the Fund, and Penn Elastic at all times until August 10, 1981 made all agreed-upon contributions to the Fund.

On August 10, 1981, Penn Elastic ceased operations at its West Point, Pennsylvania facility, and, by so doing, withdrew from participation in the Fund. Prior to this time, the MPPAA had been enacted and had come into effect,[1] and, on November 13, 1981, the Trustees of the Fund notified Penn Elastic that the Fund was asserting a claim against Penn Elastic under the MPPAA for "withdrawal liability" in the amount of $894,130.00. The notification advised Penn Elastic that withdrawal liability had been calculated pursuant to the "presumptive method" provided for under the MPPAA, and demanded that Penn Elas-

tic commence payment of such withdrawal liability within 60 days.

On February 19, 1982, Penn Elastic brought this action for declaratory and injunctive relief, contending that the MPPAA deprived it of property without due process of law, effected a taking of Penn Elastic's property for a public purpose without just compensation in violation of the Fifth Amendment, and deprived Penn Elastic of its right to a jury trial guaranteed by the Seventh Amendment. Penn Elastic attacked not only the MPPAA's substance, but also the procedures it contained which prescribed the exclusive methods by which an employer could challenge the assessment of withdrawal liability.

The Fund filed an Answer and Counterclaim in which it denied certain of Penn Elastic's factual allegations, raised a number of affirmative defenses, and sought entry of judgment against Penn Elastic in the amount of the claimed "withdrawal liability" together with "all interest, costs, counsel fees, penalties and liquidated damages as may be allowed by MPPAA and other applicable law."

Thereafter, on September 28, 1983, the district court determined, based upon its interpretation of *Republic Industries, Inc. v. Central Pennsylvania Teamsters Pension Fund,* 693 F.2d 290 (3d Cir.1982), that it should consider only challenges to the facial constitutionality of the MPPAA prior to the parties' engaging in arbitration pursuant to the MPPAA, and that challenges to the constitutionality of the MPPAA as applied should await the development of a factual record through arbitration. Penn Elastic does not challenge this aspect of the district court's determination. The district court, consistent with its disposition of *Warner-Lambert,* upheld the facial constitutionality of MPPAA. It also entered summary judgment for the Fund on its counterclaim for the amount of withdrawal liability claimed, without prejudice to Penn Elastic's right to pursue arbitration. The court, however, denied an award of attor-

---

**1.** Thus, in this case, unlike *Warner-Lambert,* re-    troactivity has never been an issue.

ney's fees. These cross-appeals followed. On November 25, 1983, this Court stayed consideration of this case pending the Supreme Court's decision in *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984), which was decided June 18, 1984. After oral arguments, we again ordered this case held under advisement pending Supreme Court disposition of *Connolly v. Pension Benefit Guaranty Corp.,* — U.S. ——, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986). That case was decided February 26, 1986. This matter is now ripe for decision.

## II.

Penn Elastic, in light of the legal developments discussed fully in *Warner-Lambert,* presses only one of its constitutional challenges on appeal: its contention that the procedures used to determine the amount of an employer's withdrawal liability violate due process because of the inherent bias of the trustees and the presumption of correctness accorded their calculation. In *United Retail and Wholesale Employees Teamsters Union Local No. 115 Pension Plan v. Yahn & McDonnell, Inc.,* 787 F.2d 128 (3d Cir.1986), this Court sustained this position, requiring that we now reverse the judgment of the district court insofar as it declares that the presumption of correctness accorded the Trustees' calculation in the course of arbitration is facially constitutional.[2] For the reasons stated in *Warner-Lambert,* however, we will stay our mandate in No. 83–1788 pending possible Supreme Court review of *Yahn & McDonnell.*

Penn Elastic contends that we must also vacate that part of the district court's judgment ordering it to begin paying its withdrawal liability to the Fund. They argue that the district court really intended to defer such payments pending arbitration, but "simply expressed that intention imprecisely." We have no reason to believe that the district court's order was inadvertent.

Indeed, we have recently held specifically that MPPAA creates a cause of action to collect withdrawal liability payments *pending* arbitration. *Yahn & McDonnell,* at 132–35. Nor does our partial reversal of the district court's declaratory judgment on the facial constitutionality of MPPAA affect the propriety of the judgment on withdrawal liability—the holding of *Yahn & McDonnell* applies only to the arbitration stage which has not yet taken place.

In No. 83–1801, the Fund cross-appeals from the denial of attorney's fees in relation to its counterclaim. The district court viewed 29 U.S.C. § 1451 as the governing provision. It provides:

In any action under this section, the court may award all or a portion of the costs and expenses incurred in connection with such action, including reasonable attorney's fees, to the prevailing party.

The district weighed the various factors that courts have identified as relevant in the context of another ERISA attorney's fee provision, 29 U.S.C. § 1132(g)(1), and determined that it would not award attorney's fees. As we held in *Yahn & McDonnell,* however, attorney's fees are mandatory, not discretionary, when a pension plan prevails in an action for withdrawal liability payments, 29 U.S.C. § 1451, the MPPAA enforcement provision, provides:

(b) In any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of section 1145 of this title).

Thus, as we held in *Yahn & McDonnell,* the Fund's counterclaim was an action to enforce a delinquent contribution under 29 U.S.C. § 1145,[3] and the relevant attorney's fees provision is 29 U.S.C. § 1132(g)(2):

---

**2.** In *Yahn & McDonnell* we held that elimination of this presumption sufficed to "rescue" the constitutionality of MPPAA.

**3.** This section provides:
Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a

In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court *shall* award the plan—

.   .   .   .   .

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant....

(Emphasis added.)

The Fund is entitled to that portion of its attorney's fees attributable to its successful counterclaim for withdrawal liability payments. Insofar as the district court had discretion to deny fees for the defense of Penn Elastic's constitutional challenge despite the fact that the Fund prevailed on all counts, we find no abuse of discretion. A *fortiori*, in light of *Yahn & McDonnell* and our partial reversal on the merits in No. 83–1788, we cannot disturb this determination. Thus, in No. 83–1801 we reverse insofar as the district court denied attorney's fees for the Fund's successful counterclaim. Our mandate in No. 83–1801 will issue in the normal course.

collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or agreement.