**CROWN CORK & SEAL COMPANY, INC.**

v.

**CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, a federal multiemployer employee pension benefit plan, Robbins, Loran W., Winstead, Marion M., Sansone, Robert C., Baker, Robert J., McDougall, Howard J., Bunte, Arthur H., Cook, R. Jerry, and Pulliam, R.V., its present trustees in their fiduciary capacity(ies).**

**Appeal of CENTRAL STATES SOUTH-EAST AND SOUTHWEST AREAS PENSION FUND, and its trustees, Loran W. Robbins, Marion M. Winstead, Robert C. Sansone, Robert J. Baker, Howard J. McDougall, Arthur H. Bunte, R. Jerry Cook and R.V. Pulliam.**

**No. 89–1086.**

United States Court of Appeals, Third Circuit.

Argued May 31, 1989.
Decided July 14, 1989.

Kent Cprek, Sanford G. Rosenthal, Sagot & Jennings, Philadelphia, Pa., Thomas C. Nyhan, Terence G. Craig (argued), Lance D. Taylor, Central States Law Dept., Chicago, Ill., for appellants.

Steven B. Feirson (argued), Alan D. Berkowitz, Nancy J. Bregstein, Lisa K. Osof-

sky, Dechert Price & Rhoads, Philadelphia, Pa., for appellee Crown Cork & Seal Co., Inc.

Carol Connor Flowe, Acting Gen. Counsel, Peter H. Gould, Asst. Gen. Counsel, Israel Goldowitz (argued), Sr. Counsel, John Foster, Atty., Office of the Gen. Counsel, Pension Benefit Guaranty Corp., Washington, D.C., for amicus curiae, Pension Benefit Guaranty Corp.

Before HIGGINBOTHAM, GREENBERG and HUTCHINSON, Circuit Judges.

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

This appeal requires the court again to address the scope of the arbitration requirement of the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381 *et seq.* Central States, Southeast and Southwest Areas Pension Fund and its Trustees (collectively "Fund") appeal from an order of the district court of December 30, 1988, entered on cross-motions for summary judgment. The accompanying memorandum decision held that Crown Cork & Seal Co., Inc. ("Crown Cork") could bypass arbitration of its withdrawal liability dispute with the Fund, and was entitled to a declaratory judgment on the merits of the dispute. We will reverse the order of December 30, 1988, to the extent that it granted Crown Cork's motion for summary judgment but will affirm the order insofar as it denied the Fund's cross-motion and will remand this case with instructions to the district court to defer the dispute to arbitration.

## I.

■ As this court recently summarized, MPPAA was "Congress' response to the growing problem of financial insolvencies of multiemployer pension plans" caused by the withdrawal of contributors, and was aimed at protecting the financial integrity of these plans by requiring that withdrawing employers pay a withdrawal liability sum. *Colteryahn Dairy v. Teamsters & Employers Pension Fund,* 847 F.2d 113, 116 (3d Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 865, 102 L.Ed.2d 989 (1989). An employer is deemed to have "completely withdrawn" from a plan when it either "(1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan." 29 U.S.C. § 1383(a).[1] The withdrawing employer is liable to the plan for its allocable share of the plan's unfunded vested benefits. 29 U.S.C. §§ 1381, 1391.

■ "Provisions for the quick and informal resolution of withdrawal liability disputes are an integral part of MPPAA's statutory scheme." *Flying Tiger Line v. Teamsters Pension Trust Fund,* 830 F.2d 1241, 1244 (3d Cir.1987). Thus, the statute provides that "[a]s soon as practicable after an employer's complete or partial withdrawal," the plan is required to determine the amount of withdrawal liability, notify the employer of its assessment, and demand payment. 29 U.S.C. § 1399(b)(1). The employer has 90 days within which to request review of the plan's determination, section 1399(b)(2)(A),[2] and the plan must notify the employer of the result of such review. Section 1399(b)(2)(B).

If the employer remains dissatisfied with the plan's determination, MPPAA provides for resolution of the dispute through arbitration. Specifically, section 1401(a)(1) provides that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." Arbitration must be initiated within a 60–day period after the earlier of the plan's response to the employer's request for review, or 120 days after the date of the request itself. 29 U.S.C. § 1401(a)(1). If arbitration is not initiated within the specified time period, the amount demanded by the plan "shall be due and owing."

---

1. A "partial withdrawal," which is not implicated in this case, is defined at 29 U.S.C. § 1385(a).

2. Our references to "section" relate to title 29 of the United States Code.

29 U.S.C. § 1401(b)(1). However, if arbitration is pursued, an action may be brought in a district court "to enforce, vacate, or modify the arbitrator's award." 29 U.S.C. § 1401(b)(2).

Although MPPAA became law on September 26, 1980, it imposed withdrawal liability on employers who either partially or completely withdrew from a plan after April 29, 1980. 29 U.S.C. § 1461(e) (1982) (amended 1984). "MPPAA was made retroactively effective in order to prevent employers from withdrawing from multiemployer plans during congressional debate of MPPAA." *Central States, Southeast and Southwest Areas Pension Fund v. 888 Corp.*, 813 F.2d 760, 765 (6th Cir. 1987) (citation omitted).[3] However, on July 18, 1984, Congress, by enacting section 558 of the Deficit Reduction Act of 1984 (DEFRA), amended MPPAA to eliminate its retroactive reach, and to provide for the refund of any amount paid because of such retroactive application. Pub.L. No. 98–369, 98 Stat. 494, 899, *reprinted in* Historical Note accompanying 29 U.S.C.A. § 1381. Section 558 not only voids any liability incurred as a result of a complete or partial withdrawal prior to September 26, 1980, but further provides that if an employer had a "binding agreement to withdraw" on September 26, 1980, liability for withdrawals before December 31, 1980 is extinguished.[4]

---

**3.** Such retroactive application was held constitutional in *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984).

**4.** Section 558 provides in pertinent part as follows:

Elimination of Retroactive Application of Amendment Made by Multiemployer Pension Plan Amendments Act of 1980

(a) In general.—

(1) Liability.—Any withdrawal liability incurred by an employer pursuant to part 1 of subtitle E of title IV of the Employee Retirement Income Security Act of 1974 (29 U.S.C. 1381 et seq. [section 1381 et seq. of this title] ) as a result of the complete or partial withdrawal of such employer from a multiemployer plan before September 26, 1980, shall be void.

## II.

This case involves the Fund's assessment of approximately $1.3 million in withdrawal liability based upon Crown Cork's complete withdrawal from the Fund as a consequence of the closing of its St. Louis plant, where it had manufactured and assembled three-part cans. Crown Cork had made contributions to the Fund pursuant to its collective bargaining agreement with Teamsters Local 688, which represented its production and maintenance employees as well as some of its clerical employees.

Crown Cork began to consider closing the plant in early 1980 and on July 28, 1980, it formally notified the local of its intention to shut down. The local did not object to the closing but requested negotiations on the effects of the closing.[5]

On September 16, 1980, Crown Cork's Director of Production Control sent an internal mailgram to various management personnel stating that the plant would cease operations at the end of business on September 26, 1980, and that all orders should be switched to another facility. On September 23, 1980, Crown Cork signed a listing agreement with Turley Martin Company, a real estate broker, for sale of the plant. Crown Cork maintains that its signature constituted an acceptance of Turley Martin's offer to act as its broker. Brief at 40. The agreement was not signed by a representative of Turley Martin, however, until September 29, 1980. *Id.*

---

2) Refunds.—Any amounts paid by an employer to a plan sponsor as a result of such withdrawal liability shall be refunded by the plan sponsor to the employer with interest (in accordance with section 401(a)(2) [section 1101(a)(2) of this title] ), less a reasonable amount for administrative expenses incurred by the plan sponsor (other than legal expenses incurred with respect to the plan) in calculating, assessing, and refunding such amounts.

. . . .

(d) Special rule for certain binding agreements.—In the case of an employer who, on September 26, 1980, has a binding agreement to withdraw from a multiemployer plan, subsection (a)(1) shall be applied by substituting 'December 31, 1980' for 'September 26, 1980'.

**5.** Negotiations over the plant closing resulted in separate litigation. *See Teamsters Local Union No. 688 v. N.L.R.B.*, 756 F.2d 659 (8th Cir.1985).

After September 26, 1980, there was no new production work at the plant and only about one-third of Crown Cork's employees were still working.[6] Though some remaining can parts were assembled, such finish-up work was completed by October 10 and after that date only tasks incidental to final closing, such as dismantling and clean up, were performed. Between October 10 and December 31, 1980, most, but not all, of the remaining employees were laid off or transferred; on December 31, 1980, three production and maintenance employees, one clerical employee, and four management employees remained at the plant.

In November 1981, Crown Cork finally closed the plant and terminated the four remaining production and maintenance employees. Crown Cork's obligation to contribute to the Fund then ceased, and it accordingly stopped making contributions. An agreement of sale for the plant was executed on June 3, 1982, and the sale was closed thereafter.

On October 26, 1983, the Fund issued its Notice and Demand for Withdrawal Liability to Crown Cork in a total amount of $1,319,859.30, an assessment based upon a withdrawal date of November 28, 1981. In December 1983, Crown Cork made a timely request for review of the assessment, questioning the Fund's actuarial assumptions and the constitutionality of the imposition of withdrawal liability. Significantly, Crown Cork did not challenge the Fund's determination of its date of withdrawal as November 28, 1981. The Fund responded to Crown Cork's review request by letter dated March 23, 1984, reaffirming its assessment.

Crown Cork did not seek arbitration. Instead, it brought an action in the district court on November 21, 1984, for a declaratory judgment that it did not owe withdrawal liability. Crown Cork alleged, *inter alia*, that section 558 (which, as noted above, was passed on July 18, 1984) eliminated any withdrawal liability it might have.[7] The Fund asserted as an affirmative defense Crown Cork's failure to exhaust MPPAA's dispute resolution procedures—*i.e.*, its failure to timely seek arbitration, and thereafter moved to dismiss Crown Cork's complaint.

On July 2, 1985, the district court granted in part and denied in part the Fund's motion to dismiss. Significantly for present purposes, the court rejected the Fund's argument that Crown Cork was barred from raising section 558 as a defense because it had failed timely to initiate arbitration.[8]

In 1988 the parties filed cross-motions for summary judgment.[9] On December 30, 1988, the district court granted Crown Cork's motion and denied that of the Fund, holding that Crown Cork was exempt from withdrawal liability under section 558. The court first reiterated that Crown Cork's failure to seek arbitration before, or within a fixed time after, the passage of DEFRA did not bar Crown Cork's section 558 claim as prior to the passage of DEFRA "there was no reason for Crown to request arbitration." Slip op. at 8. It added that "nothing in either the statute or case law ... requires Crown to seek arbitration of its DEFRA claim within 60 days of its enactment." *Id.* at 9. Finally, it concluded that since the facts of the case were undisputed and the parties disagreed only about

---

6. More specifically, nine of 26 management employees, 44 of 148 production and maintenance employees, and four of 12 clerical employees, remained.

7. Crown Cork also alleged that any liability was the responsibility of the Fund's trustees, as they had mismanaged the Fund, and that MPPAA was unconstitutional.

8. The district court did dismiss Crown Cork's claim of mismanagement by the Fund's trustees. It also dismissed the constitutional claims insofar as they alleged that the application of

MPPAA to Crown Cork was unconstitutional, reasoning that "[s]uch a claim requires facts that must be resolved at arbitration."

9. The long delay in this case was partially caused by the circumstance that on October 21, 1985, the case was put in a suspense status pending the decision of the Supreme Court in *Connolly v. Pension Benefit Guaranty Corp.*, 475 U.S. 211, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986). The motion to restore the case to active status was not filed until August 29, 1988.

their legal significance, "submitting the claims to arbitration at this point would merely delay the resolution of this dispute." *Id.* at 10.

Going on to address the merits, the district court held that Crown Cork satisfied the requirements of section 558. The court was of the view that no specific agreement was necessary to satisfy section 558's requirement of a "binding agreement to withdraw" when actions taken by the employer evidence a definite commitment to withdraw, and it reasoned that Crown Cork had so committed itself by September 26, 1980. Slip op. at 13–14. The court took the alternative position that both the listing agreement with Turley Martin, and the "agreement" with Local 688 to close the plant, satisfied the statutory mandate. Slip op. at 15 n. 11. The court also held that Crown Cork had completely withdrawn by December 31, 1980, notwithstanding the Fund's determination of the withdrawal date as November 28, 1981, reasoning that by the former date Crown Cork had ceased all work activities except for those " 'incidental to cessation of normal business activities.' " Slip op. at 11 (citation omitted). The court therefore held that Crown Cork was exempt from withdrawal liability.[10]

The Fund appealed, and the Pension Benefit Guarantee Corporation filed an amicus curiae brief in support of the Fund's position.

### III.

The Fund raises three alternative arguments regarding the role of arbitration in resolving this case. First, it asserts that Crown Cork is permanently barred from claiming that it is exempted from withdrawal liability under section 558 because it failed to arbitrate timely the Fund's deter-

mination of its date of withdrawal before the passage of section 558. Second, it maintains that Crown Cork is so barred because it failed to seek timely arbitration after section 558 was passed.[11] Third, it claims that even if Crown Cork can still raise section 558 as a defense to the assessment of withdrawal liability, disputed issues relating to Crown Cork's withdrawal must be arbitrated before a court may reach them, and a remand to allow such arbitration is warranted.[12]

Crown Cork disputes each of these contentions, asserting that it has not waived its section 558 claim by failing to seek timely arbitration, and further maintaining that "in any event" arbitration was properly bypassed because this case involves a "pure question of law on a record lacking any material factual disputes." Brief at 22, 23.

■ We note at the outset that "under MPPAA there is no *per se* exhaustion requirement under which the court lacks jurisdiction to hear cases that have not first been before an arbitrator." *Dorns Transportation Inc. v. Teamsters Pension Trust Fund,* 787 F.2d 897, 903 (3d Cir.1986). Thus, Crown Cork's failure to initiate arbitration does not unconditionally preclude it from seeking relief from the Fund's assessment in a judicial forum.

■ This having been said, we fully concur with the district court's conclusion that under the facts of this case, Crown Cork's failure to seek timely arbitration before the passage of DEFRA does not now bar it from raising section 558 as a defense to the assessment of withdrawal liability. As the Court of Appeals for the Sixth Circuit succinctly put it when confronted with a similar argument, "we decline to find that [the

---

**10.** In the district court Crown Cork argued that MPPAA irrationally discriminates among groups of employers in violation of the Equal Protection Clause. The district court in its December 30, 1988, opinion did not reach this contention as it ruled in favor of Crown Cork on statutory grounds. Inasmuch as Crown Cork does not advance the contention as an alternative ground for affirmance we will not discuss it further.

**11.** The argument is pressed by the amicus curiae. Brief at 20.

**12.** We address this latter contention despite Crown Cork's assertion that the Fund has waived any right to insist upon arbitration because it never made this argument to the district court, brief at 27, as we are satisfied it was raised and the district court did address the issue.

employer] is out of court because it failed to arbitrate a defense that it did not have." *888 Corp.*, 813 F.2d at 764.[13] Here, as in *888 Corp.*, Crown Cork's deadline for seeking arbitration had expired by the date of DEFRA's enactment. To hold that Crown Cork is nonetheless barred from asserting section 558 as a defense would render the availability of such a defense dependent upon the fortuity of whether a fund's determination of a date of withdrawal fell before or after section 558's deadline.

The Fund maintains that barring Crown Cork from raising section 558 creates no injustice because it had every incentive *before* DEFRA was passed to challenge the Fund's determination that November 28, 1981 was its date of withdrawal. According to the Fund, "a 1980 withdrawal date would have eliminated Crown Cork's responsibility for $96,707 in withdrawal liability." Brief at 22.[14] Even if this claim is accurate, we are unpersuaded by the Fund's argument. At the time Crown Cork could have sought arbitration, the stakes were significantly smaller than they are now, and thus there was much less reason for Crown Cork to incur the costs of arbitration. Holding Crown Cork to its decision not to arbitrate originally in the face of a subsequent change in the law having such a vast effect upon its potential liability can hardly be justified on the ground that its defense was voluntarily abandoned; rather, it would constitute an unwarranted exercise of judicial hindsight. Moreover, to hold that an employer's pre-DEFRA incentive to arbitrate is controlling in this context would necessitate a somewhat subjective evaluation of both the "strength" of

such incentives and of their legal viability at the relevant time.[15] Accordingly, we hold that Crown Cork's failure to initiate arbitration before DEFRA was passed does not bar it from challenging the Fund's assessment of withdrawal liability on the ground of DEFRA's subsequent elimination of MPPAA's retroactive reach.

We also agree with the district court's determination that Crown Cork is not barred by its failure to seek arbitration within some fixed period of time after DEFRA's enactment.[16] Section 558 is silent as to the time within which arbitration must be initiated if, as here, it provides an employer with a new defense after MPPAA's deadline for arbitration has expired. Indeed, it does not mention arbitration at all. Although section 1401 of MPPAA establishes time limits for initiating arbitration, the countdown is triggered either by an employer's request for review or a plan's response thereto—events totally unrelated to an amendment of the Act. Accordingly, we are unwilling indiscriminately to borrow a time limit from section 1401 as the period after DEFRA's enactment within which Crown Cork should have sought arbitration.

Although Crown Cork, then, is not entirely barred from raising section 558 as a defense by virtue of its failure to initiate arbitration, this conclusion does not resolve for us the question of whether or not there should now be arbitration. In now opposing arbitration, Crown Cork cannot reasonably deny that this case involves a "dispute between an employer and the plan sponsor of a multiemployer plan concerning a deter-

---

**13.** *See also Combs v. Leishman,* 691 F.Supp. 424, 429 (D.C.Cir.1988); *Connors v. Economy Bldg. Systems, Inc.,* 651 F.Supp. 849, 852–53 (D.C.Cir. 1986).

**14.** The Fund relies in part upon *Board of Trustees v. North Kitsap Gravel & Asphalt Co.,* No. C84–176C (W.D.Wash.1984), where the court held that the employer's failure to arbitrate the pension fund's determination of its date of withdrawal before the passage of DEFRA barred it from doing so thereafter because at the time arbitration could have been initiated, circuit precedent provided that the retroactive imposition of withdrawal liability under MPPAA was unconstitutional.

**15.** It bears noting that a fund's determination of a later rather than earlier withdrawal date will not always result in an increase in withdrawal liability; a decrease in such liability also could result. Furthermore, although our result is not dependent on the point, it is not clear that Crown Cork was aware when it failed to arbitrate initially of the savings it could achieve from the fixing of a 1980 withdrawal date.

**16.** In the circumstances we obviously need not consider whether the period would be 60 or 120 days.

mination made under sections 1381 through 1399," and it does not seem to do so. 29 U.S.C. § 1401(a)(1). Furthermore, this court and others have deemed similar "date of withdrawal" questions arising under section 558 to be subject to arbitration. *See Warner–Lambert Co. v. United Retail & Wholesale Employee's Teamster Local No. 115 Pension Plan*, 791 F.2d 283 (3d Cir.1986); *see also Robbins v. Admiral Merchants Motor Freight, Inc.*, 846 F.2d 1054, 1057 (7th Cir.1988). Nevertheless, Crown Cork contends that MPPAA's arbitration requirements may be bypassed when a case involves questions of pure statutory interpretation, which it says is the situation here. We reject this contention.

■ First, although the law in this circuit has undergone a period of development on the issue of the arbitrability of purely legal issues under MPPAA, it is now established that "where the issue of statutory interpretation 'involves only a MPPAA section that Congress explicitly reserved for arbitration,' arbitration is the appropriate route for resolution of the dispute." *Colteryahn*, 847 F.2d at 123 (citing *Flying Tiger*, 830 F.2d at 1254).[17] Crown Cork's efforts to characterize these recent cases as having held otherwise are unavailing in light of their unequivocal pronouncements that " 'it should appear beyond cavil that the existence of an issue of statutory interpretation, standing alone, does not justify bypassing arbitration.' " *Flying Tiger*, 830 F.2d at 1255 (citation omitted); *accord Colteryahn*, 847 F.2d at 123. Thus, circuit precedent clearly directs that in view of Congress' plain mandate to "arbitrate first," even pure issues of statutory interpretation are subject to MPPAA's arbitration requirements if they involve sections 1381–1399.[18]

■ We also have some reservations about accepting Crown Cork's characterization of the issues in this case as involving "pure question[s] of law." As we stated in *Flying Tiger*, " 'whether an employer's defense is a question of fact, or of law, or a mixed question of fact and law, is often difficult to discern....' " 830 F.2d at 1255 (citation omitted). Here, the questions of whether there was a "binding agreement to withdraw" by September 26, 1980, and, if so, whether a "complete withdrawal" occurred by December 31, 1980, are not in our view sufficiently independent of the particular facts of this case to warrant characterizing them as purely legal.[19]

---

**17.** As we noted in *Colteryahn,* circuit precedent permitting arbitration to be bypassed—particularly, *Dorn's Transportation,* 787 F.2d 897—has been limited to its particular facts. 847 F.2d at 123 n. 17.

**18.** Crown Cork relies in part upon the Sixth Circuit's decision in *888 Corp.,* 813 F.2d at 764, where the court not only found that the employer was not barred from raising section 558 as a defense because of its pre-DEFRA failure to initiate arbitration, but further held that arbitration would not be required because the relevant facts were undisputed and because there was no particular need for agency expertise. *See* brief at 25. However, the Sixth Circuit stressed in a subsequent decision that *888 Corp.* did *not* stand for the proposition that issues involving exclusively statutory interpretation were not within the authority or expertise of arbitrators. *See Mason and Dixon Tank Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund,* 852 F.2d 156, 166 n. 11 (6th Cir.1988).

**19.** For instance, assuming *arguendo* that some sort of agreement is in fact necessary to satisfy section 558's "binding agreement to withdraw" requirement, it would appear to be a mixed question of law and fact whether Crown Cork's "agreement" with Local 688 to close the plant, or its listing agreement with Turley Martin, satisfy the statutory dictates, and a predominantly factual question whether the parties intended to be bound in the requisite fashion as of September 26, 1980. *See Warner–Lambert,* 791 F.2d at 287–88. *See also Salem Laundry Co. v. New England Teamsters and Trucking Industry Pension Fund,* 829 F.2d 278, 280 (1st Cir.1987) (standard of review of trial court's decision that no binding agreement to withdraw existed as of September 26, 1980, is "clearly erroneous," since " '[i]t is a question of fact whether any particular conduct or actions imply a contractual understanding.' " (citation omitted)). Even if, as the district court held, no specific agreement is necessary, it would seem to be a mixed question of fact and law whether Crown Cork's activities evidenced a definite commitment to withdraw by September 26. Finally, we believe that even the question of whether Crown Cork "permanently cease[d] all covered operations under the plan" pursuant to section 1383(a)(2) by December 31, 1980 is best characterized as a mixed factual and legal one.

Moreover, even if the "legal" aspects of some of the relevant inquiries outweigh the "factual" ones, it does not follow that a preliminary determination by a MPPAA arbitrator would not be worthwhile. A case need not " 'bristle[ ]' with factual issues" for an arbitrator's input to be valuable, *I.A.M. Nat'l Pension Fund v. Clinton Engines Corp.*, 825 F.2d 415, 418 (D.C.Cir. 1987) (citation omitted). Rather, cases involving mixed questions of fact and law likewise undoubtedly benefit from the "special knowledge and expertise of a skilled labor and pension law arbitrator," *Grand Union Co. v. Food Employers Labor Relations Ass'n*, 808 F.2d 66, 70 n. 5 (D.C.Cir.1987); after all, even "pure" issues of statutory interpretation under sections 1381–1399 are "interpretations which we believe Congress envisioned would be made by the arbitrator in the first instance." *ILGWU Nat'l Retirement Fund v. Levy Bros. Frocks*, 846 F.2d 879, 886 (2d Cir.1988).

We recognize that MPPAA's arbitration scheme has been characterized by this court and others as an "exhaustion of administrative remedies" requirement, and as such subject to exceptions [20] and to avoidance if "requiring arbitration would serve none of the policies underlying the exhaustion doctrine." *Clinton Engines Corp.*, 825 F.2d at 417; *see also Flying Tiger*, 830 F.2d at 1252 ("there may be ... circumstances where the arbitral process would be either inappropriate or futile"); *Republic Industries, Inc. v. Central Pa. Teamsters Pension Fund*, 693 F.2d 290 (3d Cir. 1982). On balance, however, we do not believe that this is a case where bypassing arbitration is warranted. The Fund (with the concurrence of the Pension Benefit Guaranty Corporation) strenuously argues

that if Crown Cork's failure to arbitrate earlier does not preclude it from challenging the November 28, 1981, withdrawal date, arbitration should proceed,[21] and as just discussed we believe that deferring the case to arbitration would not be unproductive. *Compare 888 Corp.*, 813 F.2d at 764, discussed *supra* note 18. Had the district court deferred this case to arbitration it would have had strong precedent for its actions. *See Warner Lambert*, 791 F.2d at 287–88 (affirming district court's deferral of section 558 dispute to arbitration in analogous context). Thus, the question boils down to whether arbitration should be bypassed on the ground that judicial economy might not be served by remanding the case at this stage of the proceedings. In our view the answer must be no. To hold otherwise would, as a practical matter, leave the arbitrability of MPPAA disputes to the unfettered discretion of the district court, a result which Congress plainly did not intend in directing that disputes involving sections 1381–1399 "*shall* be resolved through arbitration." 29 U.S.C. § 1401(a)(1) (emphasis added). *See Grand Union Co.*, 808 F.2d at 70.

## IV.

This court has been vigilant in enforcing Congress' mandate in MPPAA to "arbitrate first." Accordingly, while we find that Crown Cork's failure to initiate arbitration does not bar it, under the particular facts of this case, from defending against the Fund's assessment of withdrawal liability, we hold that its defense must now be arbitrated. Accordingly, the order of December 30, 1988, will be affirmed in part and reversed in part and this matter will be remanded to the district court for further proceedings consistent with this opinion in-

---

**20.** Crown Cork does not appear to maintain that any of the three exceptions to exhaustion that we recognized in *Republic Industries* is applicable here; it never asserts that irreparable injury will result if arbitration is ordered, that arbitration would " 'clearly and unambiguously violate statutory or constitutional rights,' " or that arbitration would be "futile" in the sense contemplated in *Republic Industries*. 693 F.2d at 293 (citation omitted). In any event none are applicable.

**21.** *Compare, e.g., Park South Hotel Corp. v. New York Hotel Trades Council*, 851 F.2d 578, 582 (2d Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 493, 102 L.Ed.2d 530 (1988) (exhaustion of arbitration remedy not required because, *inter alia,* the parties agreed that arbitration was not required).

cluding entry of an order to defer the matter to arbitration. Each party will bear its own costs of the appeal.